JAMES SHAW & others *vs.* SARAH M. TOMPSON.
THEOPHILUS MOORE & others *vs.* MARY A. TOMPSON.

A landowner, under contract with whom a builder is erecting a house upon the land, can-
not prevent the attaching of the liens of the builder's mechanics for labor thereon, b r
orally forbidding them to perform it.

The extent to which the judge, at a trial, shall state portions of the evidence to the jury,
is a matter of discretion and not subject to exceptions.

In an action to enforce a mechanic's lien for labor performed on two houses, the fact that
the petitioner is not able to state the precise share of the labor which he performed on
either house will not necessarily defeat his recovery altogether; but the jury are war-
ranted in sustaining his lien against each house for such certain amount of the labor as
they are satisfied that he performed thereon, even though they may not be satisfied that
he did not perform more.

PETITIONS to enforce mechanics' liens for work done in build-
ing houses on two lots of land in Brookline; tried together in the
superior court, before *Reed*, J., who allowed a bill of exceptions
of which the following are the material parts:

"The cases were defaulted on the second day of the term,
when reached in their order, and damages assessed by the court
the same day. On the next day the respondents moved to have
the defaults taken off, and to restore the cases to the trial list,
offering to submit to such terms as the court might order. The
court refused the motions, but opened the cases for the reassess-
ment of damages merely, stating to the parties at the time that
no question as to the validity of the liens would be opened, but
the amounts due would be only considered.

"The certificates of the petitioners, filed with the town clerk
of Brookline, were put in evidence by them. All of them
claimed for work done on each of the houses before and after
April 29, 1869, except James E. Poole, who claimed for work
done on Mary A. Tompson's house only, both before and after
that date. It appeared in evidence that the petitioners were
employed by and performed the labor for Thomas C. Carson,
who had contracted orally with the respondents, through Samuel
Tompson, their agent, to do the carpenter's work on the houses.
The houses stand near each other, and were carried forward at
the same time. The petitioners, except Poole, who claimed for

work done only on one house, worked part of the time on one and part of the time on the other, as the work required. They sometimes went from one house to the other on the same day, doing part of a day's work on each. Carson, the contractor, was paid from time to time by the respondents.

" The petitioner Moore, who claimed on the house of Mary A. Tompson $64, and on the house of Sarah M. Tompson $79.50, presented his book, in which he charged his labor each day. By the book it appeared, and he testified, that, though he charged labor to each of said houses, yet he charged only full days to each house, and kept no account in it of division of days ; that, if he commenced the day on one house, he charged the day to that house, though it often happened that he worked on both houses during the day ; that sometimes, once in two or three days, he adjusted the time worked on each house as well as he could, and as he thought was right, charging more or less to one or the other house ; that, when he came to make up his certificates to enforce his lien, he made up his account with each house according to his book account, his best judgment and recollection ; and that he could not say it was perfectly correct, but thought and believed it about right. John E. Cox, another petitioner, testified that he kept a book of time, but rarely worked on both houses the same day, (though he did sometimes,) and kept no account of division of days ; that if he did so he made it right as near as he could, at the end of two or three days or a week. All the other petitioners, claiming liens on both houses, kept accounts of the days' work done for Carson on both houses, but no account of the amount of work done on the separate houses. They testified that, when they came to make up their certificates of liens, they divided the gross amount due them for labor between the two houses, according to the best of their judgment and recollection, but neither could swear that his account with either house was perfectly correct, though they thought them about right. One of them testified that he was assisted by Carson, aided by Carson's book, in which he (Carson) kept an account of the labor performed on each house ; though no such book was produced, and Carson testified that he had destroyed it. No other testi-

mony was offered to show how much labor the several petitioners performed on each house.

" The respondents contended, and offered evidence tending to prove, that on April 26, 1869, Carson notified their agent that he had abandoned the jobs, and should not finish the houses, that his workmen held possession of them, and that the defendants could have the keys and possession of the houses when the workmen were paid the amount due them for labor; that, immediately upon receiving this notice, the agent went to one of the houses, in which all the petitioners except Cox and Poole were then at work, (Carson going with him,) and told them, in Carson's hearing, to quit work, and not strike another blow, that the respondents would not be responsible for their labor, and to take their tools and leave the premises and do no more work on either house. One witness who was present testified that the agent told the petitioners that Carson had abandoned the job. It was not contended that written notice was ever given to either of the petitioners that the respondents would not be responsible for their labor.

" The petitioners offered evidence tending to prove that on April 29, and not on April 26, as claimed by the respondents, the agent of the respondents came into one of the houses where the petitioners, except Cox and Poole, were at work, and told them that the respondents would not be responsible for their labor; but the witnesses who were the petitioners denied that he told them to leave the premises, or stop work, or that Carson had abandoned the job.

" The respondents contended, and were permitted to argue to the jury, that upon the evidence there was a conspiracy between Carson and the petitioners to defraud the respondents, and to compel them to pay the claims for labor, after having paid Carson according to the contract; and they requested the following instructions:

" 1. That if the owner of the premises orally forbade any of the petitioners to do further labor they could maintain no lien for labor afterwards performed, unless such forbidding was subsequently withdrawn, either directly or by instructions to the contractor to proceed.

" 2. That Carson was working under an oral contract, which the respondents had a right to terminate at any moment; and if the jury should find that the authorized agent of the respondents, in the presence of Carson, orally forbade any of the petitioners to do further work on the .premises, and that Carson made no answer or comment, that was evidence from which they might find that the contract between Carson and the respondents was dissolved, and that the petitioners so forbidden had notice thereof.

" 3. That if the jury should find that Carson's contract with the owners of the premises was terminated, the petitioners were not thereafter performing labor by virtue of an agreement with or by consent of any person having authority from or rightly acting for said owners, unless Carson afterwards received authority from said owners to employ the plaintiffs to perform said labor, and that if such contract was so terminated, and no such authority afterwards received, the jury must be satisfied that the certificates were filed within thirty days after such termination, or they could not find for the petitioners.

" 4. That the jury must find how much work was performed by each petitioner upon each house, and how much money was paid to each for the labor done by him upon each house separately; and that, if the jury could not so find in the case of any of the petitioners, in such case they must find for the respondents.

" 5. That if the jury should find no evidence introduced to show how much labor was performed by the petitioners, or some of them, upon each house separately, and how much money was paid to each of them on each house separately, except the statement of each petitioner severally, and that said petitioner cannot state that their appropriations of time and money were correct, the jury must find for the respondents in such cases.

" The judge declined to give the instructions, except as they, or the substance of them, may be contained in the instructions which, among others, were given; and, among other things, instructed the jury as follows: Each of the petitioners is bound to satisfy you that he did work, and, before he is entitled to a verdict against each house, that he did work, and that some amount remains due to him for work performed, on each house. Each

petitioner is entitled to recover against a house only the amount which he satisfies you remains due to him for work performed on that house. The burden is on the petitioner in each case to satisfy you of the amount of work done by him on each house, and of the amount due to him for work on each house. It is not sufficient that you should be satisfied that any petitioner did the gross amount of work which is charged to the two houses, but he must satisfy you that there is some specific sum due to him for work on each particular house, before you can give him a verdict against that house.

" The judge instructed the jury as to the different ways in which a contract might be terminated; among other things, that, so far as these petitioners were concerned, if Carson abandoned his contract, that would terminate it; so if Tompson forbade Carson to go on longer on the contract, that would terminate it; that if the jury found that the contract was terminated, then if they should find that the petitioners were notified that it was so terminated, and were forbidden by Tompson to continue their work, for any work after that they could not recover; but if the contract was not abandoned or terminated in the manner stated or if the petitioners had no notice of such abandonment or termination, then the petitioners, so far as this question is concerned, might recover.

" The jury found verdicts for the full amounts claimed by all but one of the petitioners; and to the above rulings and refusals to rule the respondents alleged exceptions.'

*P. E. Tucker*, for the respondents.

*J. B. Richardson*, for the petitioners.

MORTON, J. The bill of exceptions shows that when these cases were reached in their order for trial in the superior court the respondents were defaulted and damages assessed by the court. Afterwards the respondents moved that the defaults be taken off and the cases restored to the trial list. The court refused these motions, but opened the cases for the reassessment of damages merely, stating to the parties that no question as to the validity of the liens would be opened, but the amounts due would be only considered. At the trial before the jury, the court ap-

parently construed this order so as to open not merely the question how much was due the petitioners for labor on the houses in question, but also the question whether a valid lien had attached for these amounts. Under the order thus construed, the only question open to controversy was the amcunts severally due to the petitioners for which a lien had attached. Upon all other questions as to the validity of the liens the respondents are concluded by their defaults. In this view, we are of opinion that the respondents have no ground for exception to the rulings of the presiding judge.

The first request was properly refused. The statute provides that the owner of a building, not being the party by whom or on whose behalf the contract for labor is made, may prevent the attaching of any lien for labor thereon not at the time performed, by giving notice in writing, to the person performing the labor, that he will not be responsible therefor. Gen. Sts. *c.* 150, § 4. The lien attaches, by operation of law, unless the owner gives such written notice. Orally forbidding the mechanic to do further labor will not prevent the attaching of the lien.

In response to the second and third requests the court instructed the jury that the contract might be terminated by the respondents' forbidding Carson to go on under it, or by Carson's abandoning it, and that, if it was terminated in either way and the petitioners notified thereof, they could not recover for any labor afterwards performed. These rulings adopted in substance all those parts of the requests which were proper and applicable to the only issue on trial, and were sufficiently favorable to the respondents. The court was not obliged, as requested in the last part of the second request, to select a certain portion of the testimony in favor of the respondents, and comment upon it to the jury. The issue whether the contract had been terminated was submitted under proper instructions; the extent to which the presiding judge should call the attention of the jury to the evidence bearing upon the issue was within his discretion, and is not open to exception. The last clause of the third request was rightly refused, because it was applicable only to the question whether the liens had been dissolved by a failure to file the certificates required by statute, — a question not open to the respondents.

The fourth and fifth requests were properly refused, and the instructions given upon the subjects embraced in them were correct. The fact that the petitioners were not able to state the precise amounts due on each house would not prevent them from maintaining a lien for any amount. If the jury were satisfied that a certain amount was due a petitioner for work done on either house, they would be justified in finding a verdict against such house for that amount, though they might not be satisfied that more was not due. The instructions on this point were carefully guarded, and under them the jury could have found for each petitioner, against either house, only the amount which he satisfied them remained due to him for work performed on that house. *Exceptions overruled.*