HENRY JONES *vs.* NATHANIEL P. KEEN & others.

Suffolk. March 25, 26, 1873. — June 17, 1874. COLT & DEVENS, JJ., absent.

An objection to a bill in equity that the plaintiff has a plain, adequate and complete remedy at law will be deemed to be waived if taken for the first time in an answer filed by a defendant after he has appeared without objection to the jurisdiction, at a hearing appointing a receiver and ordering the sale of property, and also at a hearing before a master.

A mortgage on a vessel is postponed to the lien given to material men by the Gen. Sts. *c.* 151, § 12.

The compensation of a receiver appointed to complete, launch, and sell a vessel and pay the proceeds into court, is not to be determined by a fixed commission on the amount of money passing through his hands ; but should be such an amount as would be reasonable for the services rendered by a person competent to perform the duty.

An exception to the finding of a master upon the facts before him is to be regarded only so far as it is supported by the statements of the master, or the evidence reported by him.

A master appointed "to hear the evidence and to report the same and all facts" bearing upon the questions at issue, has authority to decide upon controverted facts.

The findings of a master upon questions of fact are not to be set aside without clear proof of error or mistake on his part.

Notes given by the builder of a ship to a person who has furnished materials used in her construction, merely for the accommodation of such person, not to be credited on the bill, are not payment for the materials, and the fact that the notes have not been surrendered does not prevent the material-man from enforcing his lien.

The including in a claim of a lien on a vessel, materials furnished another vessel, through ignorance and not wilfully or knowingly, does not prevent the material-man from enforcing his lien against the first vessel for the materials actually used in her construction.

A person who performs labor on two vessels under an entire contract for a round sum, cannot maintain a lien under the Gen. Sts. *c.* 151, § 12, on one of the vessels for the work done on that vessel, whether he has performed his contract or has been prevented from finishing his work by the failure of the owner of the vessel to complete the vessel sufficiently for him to perform it.

A material-man, who has performed labor and furnished materials to two vessels under an entire contract for a round sum, and who after the work is done destroys, with the assent of the owner of the vessel, the original contract, and makes and antedates a new contract applicable to one vessel only, and sets up this contract in his claim for a lien as the one under which the work was done and materials furnished, cannot maintain a lien.

Under the Gen. Sts. *c.* 151, § 12, a lien exists for labor and materials furnished, as well as for labor performed and materials used in the construction of a vessel; and a person contracting with the owner of a vessel may enforce a lien for labor performed and materials furnished by persons with whom he has made a sub-contract.

A person employed at day's wages by the owner of a vessel to work as a blacksmith in making spikes and bolts from the owner's iron for use in the construction of the vessel, and who does this work and also some jobs on other vessels and some outside work by the owner's direction, has a lien on the vessel under the Gen. Sts. *c.* 151, § 12, for the labor performed on the spikes and bolts used in her construction.

A material-man, who, in his statement of a lien filed in the town clerk's office, wilfully and knowingly claims more than is due him, cannot enforce his lien.

BILL IN EQUITY filed May 10, 1871, against Nathaniel P. Keen; Allen Prior; Robert H. Patton and another, copartners; Abiel S. Lewis and others, copartners; Pembroke S. Huckins and another, copartners; J. W. Hathaway; Joshua Baker and others, copartners; Edmund H. Sears; Wadsworth Chandler, Jr.; William Bourne; Andrew Sampson and others, copartners C. Thompson and another, copartners; Amos Merritt and others,

copartners; Hiram Delano; Nathaniel Delano; Hugh Connor, C. P. Wright; J. D. Geary; Ephraim Walker, Jr.; Thomas White; Miles Sampson; John Henry; John Dobbin; Alexander McLean; Charles Sproule; and Franklin B. Cobb.

The bill alleged that in December, 1869, the defendant Keen commenced to build for himself at Duxbury, in this Commonwealth, a barque, which was at the date of the bill on the stocks unfinished; that the plaintiff had a lien * on the vessel for materials furnished in her construction; that the defendant Prior claimed to have a mortgage from Keen on the vessel for a large sum, and had notified Keen that he was about to sell the vessel under a power of sale contained in the mortgage; that there were other mortgages on the vessel, held by Patton and another, copartners, and by Lewis and others, copartners, and claims for a lien on the vessel made by the other defendants to a large amount for labor and materials furnished in the construction of the vessel; that Keen was insolvent and unable to pay his debts; that the barque constituted the greater part of Keen's property, and would if finished and launched and sold in a judicious manner realize a sum sufficient to pay all the claims for a lien, and a large portion of the mortgages; that a sale of the barque in the time and the manner proposed by Prior would work great damage and waste and cause irreparable injury to the plaintiff and the other persons claiming a lien, and would be an illegal and inequitable interference with their rights.

The bill prayed for a writ of injunction to restrain Prior from selling the barque; that a receiver be appointed to take possession of the vessel, with power to contract debts on the security

---

* The Gen. Sts. *c.* 151, § 12, provide that: "When, by virtue of a contract, expressed or implied, with the owners of a ship or vessel, or with the agents, contractors, or sub-contractors, of such owners, or any of them, or with any person having been employed to construct, repair, or launch, such ship or vessel, or to assist them, money is due to any person for labor performed, materials used, or labor and materials furnished, in the construction, launching, or repairs of, or for constructing the launching ways for, or for provisions, stores, or other articles, furnished for or on account of, such ship or vessel, in this state, such person shall have a lien upon the ship or vessel, her tackle, apparel, and furniture, to secure the payment of such debt; which lien shall be preferred to all others thereon except mariners' wages, and shall continue until the debt is satisfied."

thereof, to take precedence of other liens and incumbrances thereon, for the purpose of completing and launching the vessel, and with power to make sale of the vessel, and to hold the proceeds subject to the order of the court.

A preliminary hearing was had before *Wells*, J., who granted the prayer of the bill. A receiver was appointed, the vessel was completed, launched and sold, and the proceeds paid into court. The case was by an order dated May 22, 1871, sent to a master, who was directed " to hear the evidence which may be offered by all parties who make any claim by way of lien or otherwise to the property which is the subject of the above bill of complaint, and to report the same and all the facts bearing upon the validity, amount and priority of said claims or any of them to this court."

By a supplemental order the master was directed to fix and allow to the receiver proper compensation for his care, services, &c.

Lewis and others, the holders of the second mortgage, and Patton and another, the holders of the third and fourth mortgages given by Keen on the vessel, filed answers January 15, 1872, in which they denied the jurisdiction of the court on the ground that the plaintiff had a plain, adequate and complete remedy at law. It did not appear that the other parties consented to the filing of these answers at this time, and they were not filed by leave of court. The other defendants made no objection to the jurisdiction of the court. The master filed his report April 17, 1872. So much of the evidence reported by him as relates to the question whether the holders of the second, third and fourth mortgages had a right to take an objection to the jurisdiction of the court, at the time when they filed their answers, is stated in the opinion of the court.

In regard to the compensation to be allowed the receiver the master reported as follows : " The receiver has charged for his services the sum of $1219.90 ; viz., five per cent. on the gross amount of the proceeds of the sale of the vessel ; and included in his disbursements is the sum of $300 paid to counsel employed by him in reference to the execution of his official duties. No question was made before me as to the propriety of his employing counsel, or as to the reasonableness of his counsel's bill. But several of the parties claimed that the receiver had charged too

much for his own services, and counsel urged that five per cent. on the gross amount of sales was no proper measure of the value of the services rendered. I have great doubt whether the basis upon which the receiver estimates his compensation is sustained by custom, or is a reasonable one. Circumstances might be such that such a rate of compensation would be grossly inadequate. I regret that the evidence on this point is such as to leave me somewhat embarrassed. I am of the opinion that an intelligent, competent, conscientious person is the best judge of the value of his services ; and although objecting to the rule the receiver has adopted, I do not think the sum he has charged is unreasonable, and I allow it." The master reported the evidence bearing upon this question at length.

In respect to the claim of the plaintiff the master reported as follows : " I find there is due to him the sum of $5260.74, and that he filed a statement of his claim in the clerk's office of the town of Duxbury, April 10, 1871, which statement was duly sworn to. I find that in that statement he claims to be due him, and for which he had a lien, the sum of $5655.94. I find, moreover, that at the hearing before me it was proven that the sum of $395.20 was the price of certain of the materials furnished by him which Keen used in the construction of other vessels than the one which is the subject of this cause. I find, however, that this fact was not known to the plaintiff when he filed his statement, and that he did not wilfully and knowingly claim in his statement more than was due him. Upon its appearing that said amount did not go into this vessel the plaintiff waived any claim of a lien for the same ; and I deduct the same from $5655.94, and find the value of the material and labor furnished by him and used in the construction of this vessel to be $5260.74. All this is for materials, excepting that it includes charges for hauling said materials to the ship, amounting to $26.33, and cash paid for surveying same, $11.53. I find, moreover, that the plaintiff contracted with Keen to furnish the said materials and labor for the construction of said vessel ; that said sum of $5260.74 is the just value of the same ; that said materials and labor went into the said vessel and the construction of her, and that no part of said sum of $5260.74 had been paid, but was due when said lien statement was filed, and still remains unpaid. I find, moreover, that said statement

contained a just and true account of the demand claimed to be due and found by me to be due, with the exception above reported ; that in it the plaintiff claimed a lien on said vessel for the amount thereof ; that all just credits were given in said account and statement ; and that it stated correctly the name of the person with whom the contract therefor was made, the name of the owner of the vessel, and a description of her sufficient for identification."

The master reported the evidence in respect to this claim at length. It was contended that the claim had been paid by notes. On this question the evidence was in substance as follows : Keen was the only witness called by the plaintiff. He testified in chief that he gave notes to the plaintiff for his accommodation, not to be credited on his bill ; that he supposed the plaintiff had them still as the plaintiff had never surrendered them to him. The plaintiff was present at the hearing before the master, but did not testify. Three witnesses were called by the other defendants, who testified to various conversations with Keen, and with the plaintiff, and their evidence tended to show admissions on the part of Keen and the plaintiff that the claim had been paid by notes, that one or more of the notes had been paid by Keen, and that nothing was said about the notes being accommodation notes. Neither Keen nor the plaintiff testified in rebuttal.

As to the claim of Andrew Sampson and others, the master reported that he found the sum of $1088.84 due them for labor, that they made a contract with Keen to caulk this vessel and a schooner for $1262.50 ; that they had finished their work on both vessels and had not received any payment except that they had credited Keen with pine boards to the amount of $2.16.

The master also reported the evidence in regard to this claim as follows : Sampson testified : " I have charged 336½ days' work for the whole contract, of which 292½ are on the ship. I get at this by a fair division of the tonnage. I kept account on each until they got so mixed that I couldn't keep it correct for each separately. I know the number of days for both is correct. The schooner's tonnage was about 120 tons, old measure. I think I had the two jobs together, and so I shifted from one to the other, back and forth. The schooner was a very unprofitable vessel. I divided on the tonnage and also for the last reason. Mine is a

fair estimate. I have been a caulker for thirty years. I have caulked twenty or twenty-five vessels under contract; have worked on five hundred. I estimated the $171.50 from other vessels which I had caulked of same length and breadth. I estimated on the basis that the schooner was 120 tons, and the ship 869 tons. I have caulked a schooner before this of 120 tons, and received $188." N. P. Keen testified : " I think Sampson's estimate is a very fair one. It is worth $2.00 a ton to caulk the schooner. They charged at that time about $1.25 a ton to caulk a ship. Sampson's estimate leaves him less than $1.25 a ton on the ship." Sampson's contract was to caulk this vessel and another for a round sum.

To the allowance of this claim the defendant Prior filed the following exception : " That the .master found that Andrew Sampson and others, who did work under an entire contract for two vessels, have performed all the acts which entitle them to a lien ; whereas, from the testimony reported by him, they could not have a lien."

In regard to the claim of Edmund H. Sears, the master found that there was due Sears the sum of $348.18, for labor performed on the vessel, under such circumstances that there was a lien on the vessel for the amount. To this finding Prior filed the following exception : " That the master has not reported, though requested to do so, all the testimony, and especially the testimony in relation to the claim of Edmund H. Sears, in an entire contract for work on two vessels : whereas he should have reported the same, or found, if competent, that he had no lien."

The master thereupon made a supplemental report in which he reported certain additional facts in the Sears case, as follows : " Sears made a contract with Keen to do the outboard joining on this ship and a schooner for $1125. He finished his work on the schooner, but was not able to complete that on the ship, owing to the failure of Keen to go on with the carpenter's work of the latter vessel. The evidence showed that it would cost $150 to finish his work ; that Sears worked on the schooner 59¼ days, and that a fair price for the labor would be at the rate of $3.25 per day, making $192.56 ; and that he worked on the ship 66¼ days, and that a fair price for the labor would be at the rate of $3.25 per day, making $215.31 ; and that he also worked on the ship

249 days, the fair price for this labor being at the rate of $3.50 per day, making $871.50. This makes the value of work done on the ship, estimated by days' wages, $1086.81. He did not however make a claim for days' wages, but in his statement of a lien he claimed a reasonable compensation for as much of the work as he had done on the ship in proportion to the fair price to be paid under the contract for the whole work done, which I find to be $782.44 ; and I find that, after deducting all just credits, there is due him the sum of $348.18, for which I find that he has a lien on this ship."

No further exception was taken by any one to the allowance of this claim.

The facts in the case of Jones and Cottrell are fully stated in the opinion of the court.

The facts in the case of Amos Merritt and others, were found by the master to be as follows : These persons agreed to do the ship-carpenter's work on the vessel. They made a contract with one Simpson to do the fastening of the vessel for $850, and Simpson after doing a portion of the work made a sub-contract for the remainder with Henry, Dobbin, McLean, and Sproule, and that there was due for work done under the sub-contract the sum of $350.20. Simpson did not file any claim for a lien. Henry and the others did, but their claims were disallowed by the master on the ground that they in their statements wilfully and knowingly claimed more than was due them. The master further reported in the alternative that Merritt and others were to be allowed either $4428.09 or $4077.89 as the sum of $350.20 was added or not.

In regard to the claims of Hiram Delano and Nathaniel Delano, the master reported as follows : " The facts in relation to these two claims are the same ; and I find them to be, that the claimants are blacksmiths, and were employed by Keen to work in his shop on his iron, and mostly with their own tools, at day's wages for this ship ; and they did such work for the ship, and afterwards and during the time they thus worked for this vessel they did a few jobs on other vessels and some outside work by Keen's direction. At the end of each week they undertook to ascertain and did actually ascertain how much of their labor was expended upon the spikes, bolts, &c., which were manufactured by them for this

ship, and which were actually used in her construction. This estimate is correct, and these two claimants made their lien claim for the amounts thus ascertained, which were duly sworn to and were recorded. Said statements filed by these claimants contained the formal statements required by the statute."

To the allowance of these claims Prior filed the following exception : " That said master has found that Nathaniel Delano and Hiram Delano furnished labor for said ship : whereas he should have found, if competent to find at all, that the amount due them, which is undisputed, was not for services for which a lien is allowed by law."

The case was reserved by *Gray*, J., upon the bill, answers, master's report, the exceptions thereto, and the supplemental report of the master, for the consideration of the full court.

*J. A. Loring*, for the plaintiff.

*C. G. Davis & A. Mason*, for Prior, the first mortgagee ; and Cobb.

*J. L. Eldridge*, for Patton and another, and Lewis and others, the second, third and fourth mortgagees.

*H. J. Blodgett*, for Cottrell and Jones.

*T. P. Proctor*, for C. Thompson and another.

*J. Lathrop*, for Huckins and another ; Hathaway ; Baker and others ; Sears ; Chandler ; Bourne ; A. Sampson ; Merritt and others ; H. Delano ; and N. Delano ; contended in the cases of Sampson and Sears : 1. That under the exceptions the question as to the entirety of the contract was not open. 2. That the exceptions were too general and pointed to no particulars, and cited *Dexter* v. *Arnold*, 2 Sumn. 108, 125 ; *Holcomb* v. *Holcomb*, 3 Stockt. 281 ; *Ashmead* v. *Colbey*, 26 Conn. 287, 309. 3. That the entirety of the contract did not prevent a lien for the work done on each vessel. In addition to the cases cited in the opinion of the court, the following cases were referred to on this point : *Wilson* v. *Forder*, 30 Penn. St. 129 ; *Davis* v. *Farr*, 13 Ib. 167 ; *Harper* v. *Keely*, 17 Ib. 234 ; *Taylor* v. *Montgomery*, 20 Ib. 443 ; *Butler* v. *Rivers*, 4 R. I. 38.

*W. E. L. Dillaway*, for Connor ; M. Sampson ; Wright · Walker ; White ; and Geary.

ENDICOTT, J. This case presents for decision questions raised upon the bill, answers, master's report, and the exceptions thereto.

The parties, including all who have entered a formal appearance, filed answers or offered proof of claims, and have an interest in the proceeds of the sale of the barque Etta Loring, are twenty-seven in number, representing twenty-eight different claims, which have been passed upon by the master. This enumeration does not include the owner, who is a mere nominal party having no interest in the result. These parties may be divided into two classes : there are twenty-four, who claim liens for labor performed and materials furnished in the construction of the barque under the Gen. Sts. *c.* 151, §§ 12, 13, 14 ; and three, who claim under four different mortgages made upon her hull by her owner Keen, during her construction ; the third and fourth mortgages being held by the same persons.

No question is raised and no objections are taken to the finding of the master, in allowing a large number of the claims for labor and materials, or in rejecting several because the parties had wilfully and knowingly claimed more than was due, in the certificate of their claims, filed in the town clerk's office, § 13, *supra.* But in the master's report and the exceptions thereto, questions both of law and fact arise in regard to certain of these claims passed upon by the master, including that of the plaintiff, and also including the master's decision upon the compensation to be allowed the receiver. Questions are also open respecting the rights of the several mortgagees to share the proceeds, and it is insisted by the parties, holding the second, third and fourth mortgages, that this bill cannot be maintained, because the plaintiff has a full, complete and adequate remedy at law. These questions will be considered in reverse order.

1. In considering whether this bill should be dismissed because the plaintiff has a remedy at law it will be necessary to examine somewhat the facts, and the circumstances under which this question is presented. It is raised by Lewis & Co., who hold the second mortgage, and Patton & Ginn, who hold the third and fourth mortgages. All the other parties desire to proceed under this bill, as affording the most speedy and satisfactory determination of their rights, and of the numerous questions presented. Indeed it would raise serious complications, and work much mischief if it should be necessary at this stage to dismiss the cause. The bill seeks not only for a determination of the various liens

upon the vessel for labor and materials, but that the mortgagees may be enjoined from selling under their mortgages, and that a receiver may be appointed to finish the vessel and sell her for the benefit of all parties. At the hearing May 22, 1871, to determine whether a receiver should be appointed and the mortgagees enjoined as prayed for, the order passed by the court to that effect and also the order appointing the master seem to have been assented to by all parties. One member of the firm of Patton & Ginn was present at the hearing and made no objection. Before the sale of the vessel by the receiver, July 11, 1871, both Lewis & Co., and Patton & Ginn, had notice that the sale would take place on that day, and had retained counsel, who consulted with the counsel for the plaintiff, and no objection was made to the proposed sale or to any of the proceedings. On August 14, following, both these parties entered a formal appearance on the docket, employing the same counsel. The hearings before the master commenced October 4, and were continued from time to time until November 9, 1871. At these hearings these parties were present in person and by counsel, taking part in the proceedings; some of them were examined as witnesses, their mortgages and certain certificates they had filed were put in evidence, and they were heard, as other claimants. After the case was closed before the master, they filed answers on January 15, 1872, and for the first time they raised this question, denying the jurisdiction because there was a full, adequate and complete remedy at law. We do not think it was then open to them. They submitted to the jurisdiction, made no objection to the appointment of the receiver or to the sale, and tried their case before the master to obtain their share of the proceeds. If they intended from the first to raise the question, they did not act in good faith in delaying until January 15, 1872. If it was an afterthought, having taken their chance with the others at the hearing, it was too late to raise it at that stage of the proceedings. No one appears to have consented to the filing of these answers, and all the other parties oppose the dismissal of the bill. We do not therefore think it necessary to consider the question thus raised. The objection, so far as these parties have the right to avail themselves of it, we must consider to have been waived. *First Congregational Society* v. *Trustees*, 23 Pick. 148. *Russell* v.

*Loring*, 3 Allen, 121.   *Dearth* v. *Hide & Leather National Bank*, 100 Mass. 540.   *Lawrence* v. *Bassett*, 5 Allen, 140.   ·

2. These mortgagees also contend that their mortgages have priority to the claims for labor performed and materials furnished in the construction of the barque.   We think it well settled that they have no such preference, but that liens attach and have priority over mortgages, and this is clearly so where the mortgages are created after the contract.   The mortgage of Lewis & Co. was not recorded till May, 1871, and the mortgages of Patton and Ginn were recorded in November, 1870, and all the contracts for labor and materials appear to have been made prior to that time, as the work on the ship was suspended in December, 1870, by reason of the insolvency of Keen.   Allen Prior, who holds the first mortgage, does not raise this question.   *Donnell* v. *The Starlight*, 103 Mass. 227.   The *Granite State*, 1 Sprague, 277.   *Dunklee* v. *Crane*, 103 Mass. 470.   *The Kiersage*, 2 Curtis, 421.   ·

3. Objection is made by Allen Prior, the first mortgagee, in his exceptions to the master's report, to the amount allowed by the master to the receiver as compensation for his services, and also for counsel fees.   The basis upon which the receiver estimated his services, a commission of five per cent. on the sale, was incorrect.   It was held in *Grant* v. *Bryant*, 101 Mass. 567, that the compensation of a receiver could not be determined by a fixed commission on the amount of money passing through his hands, but such an amount should be allowed as would be reasonable for the services rendered by a person competent to perform the duty.   The master, objecting to the basis adopted by the receiver, determined the sum charged to be reasonable and allowed it.   We see no reason to disturb his finding upon the evidence reported.   Nor do we see any reason for disturbing the finding of the master, allowing in the disbursements of the receiver a charge for counsel fees.   No objection was made before the master to the propriety of his employing counsel or the reasonableness of the bill.   The master was not requested to report the evidence on the subject.   We are therefore unable to pass upon that question, and it is not open on the exception.   An exception to the finding of a master upon the facts before him is to be regarded only so far as it is supported by the statements of the master, or the evidence reported by him. *Harding* v. *Handy*, 11 Wheat. 103.   *Adams* v. *Brown*, 7 Cush. 220.

4. Another objection made by the same party, that the master had no authority under the order of the court to decide upon controverted facts, but could only report evidence, is equally untenable. It is the province and duty of a master to report his conclusions of fact upon all matters referred to him; in the order appointing him in this case there is no such limitation or restriction as to preclude him from the performance of his accustomed official duty. *Dean* v. *Emerson*, 102 Mass. 480.

5. Several parties except to the finding of the master allowing the claim of the plaintiff. A large amount of testimony is reported on this point. The two principal objections raised are that the lumber was furnished on general account and not for the Etta Loring, and that during the building of the vessel notes were given by Keen in payment. The findings of a master are not to be set aside without clear proof of error or mistake on his part. Upon reviewing the testimony we find that there was direct evidence that the lumber was furnished for the Etta Loring ; and that, although during her construction notes were given by Keen to the plaintiff, they were given for his accommodation, not to be credited on the bill, and without regard to the amount due. Evidence to contradict and control this on both points was introduced, but it was for the master to decide upon the preponderance of the evidence submitted, and we cannot say that there is such proof of error or mistake on his part as would justify the setting aside of his finding. Keen never paid any of these notes, as they were accommodation notes, not given on account of the bill for lumber. The fact that they have not been surrendered to Keen does not prevent the plaintiff from proving his claim, which the master finds is still due and unpaid.

The fact that an item for materials actually used in another vessel was included in the plaintiff's certificate, filed in the town clerk's office, does not invalidate his claim, as the master finds he did not know it at the time of filing, and did not wilfully or knowingly claim more than was due. Gen. Sts. *c.* 151, § 14.

The other exceptions based upon the incidental statements of particular witnesses, or upon the fact that the plaintiff did not contradict them, cannot affect the general finding of the master. The master's finding on this claim must therefore stand.

**6.** Exceptions are taken to the allowance of the claims of Andrew Sampson and others, and of Edmund H. Sears. Both the claimants made a contract with Keen, one to do the caulking, the other the outboard joining on the barque, and also on a schooner for a round sum for both. No apportionment was made of the amount of labor to be performed or the sum to be paid on either vessel.

In making the estimate of the lien to which each claimant is entitled, the master bases his finding in the case of Sampson and others, on the comparative tonnage of the two vessels, and the cost per ton of doing the work contracted for; and in the case of Sears on a fair compensation for the work done on the barque in proportion to the fair price to be paid under the contract for the whole work done. It is obvious that elements are here introduced not included in the original agreements for a round sum, and in the absence of any statute provision giving a lien in such case, we think no lien exists. The considerations controlling each party in making such a contract we cannot now determine.

It does not appear in terms or by implication to have been based in the first case upon the tonnage of the two vessels, or the cost per ton to do the work on each; nor in the second, upon a fair compensation for doing a portion of the work on the barque. It has been held that upon a general contract to furnish material or labor for one or more vessels or buildings, no entire sum for the whole being stipulated, but the same to be furnished at certain rates, or without any rate being named, then the amount furnished on each particular vessel or building may be estimated and a lien attach for the same. *Rogers* v. *Currier*, 13 Gray, 129. *Briggs* v. *A Light Boat*, 7 Allen, 287. *Shaw* v. *Tompson*, 105 Mass. 345. *The Kiersage*, 2 Curtis, 421. But these claims being based upon an entire contract for a round sum, do not fall within the rule laid down in these cases; but are to be governed by the principles stated in *Morrison* v. *Minot*, 5 Allen, 403; *Graves* v. *Bemis*, 8 Allen, 573; *Mulrey* v. *Barrow*, 11 Allen, 152; *Driscoll* v. *Hill*, 11 Allen, 154; where it was held that on a contract to furnish labor and materials for several buildings for a gross sum, no lien could be enforced upon one of the buildings. The St. of 1872, *c.* 318, was probably intended to meet the difficulty suggested in these cases.

7. Upon the claim of Jones and Cottrell the master submits the facts for the decision of the court. It appears that they had a written contract with Keen, dated August 15, 1870, to do certain work and furnish certain materials for the barque Etta Loring, and also for the schooner D. K. Ham, for the gross sum of $2200. If the claimants relied only on this contract, their lien would fail for the reasons above stated. But they in fact rely on a substituted contract. Some time after the schooner was finished the first contract was annulled and destroyed, and a new contract was made relating solely to the barque, wherein they agreed to do certain work for $1700, and to furnish certain materials for $300, and this new contract was dated back to correspond to the date of the original contract, August 15, 1870. Jones, one of the partners, was a witness ; he was unable to tell when the second contract was written, but said that it was not as late as February, but he would not swear that it was not as late as January, 1871. He also stated that the old contract was torn up and the new one substituted, "because he thought his lien would be better on the ship." In the certificate of lien filed in the town clerk's office January 10, 1871, they claim $1925 due upon the last contract, deducting $75 for labor and material contracted for, but not furnished to Keen. In proof of this they offer the substituted contract. This clearly is not the contract under which the labor and material were furnished. It differs materially from the original in applying to one and not to two vessels. It is impossible to tell what was due for labor and material on the schooner. The apportionment attempted is purely arbitrary, made after Keen's insolvency, for the purpose of preparing the new contract and to obtain an unfair advantage. As the work was done and the material furnished under the first contract, and as no apportionment can be made between the schooner and the barque, the lien must fail and the claim be disallowed.

8. Upon the claim of Amos Merritt and others, a question arises upon the alternative report of the master, whether they shall be allowed not only for their personal labor, but for the labor of persons employed by them. The language of the statute provides for this. When "money is due to any person for labor performed, materials used, or labor and materials furnished," "such

person shall have a lien," &c. Gen. Sts. *c.* 151, § 12. It is true that the laborer, whose labor is thus furnished by the party making the contract and claiming the lien, may also enforce his lien, but the statute contemplates this, and provides in section 19 against the enforcement of a double lien for the same labor. See also the St. of 1862, *c.* 185. The larger sum found by the master, which includes the labor furnished, should be allowed.

9. The facts are also reported by the master upon the separate claims of Hiram and Nathaniel Delano, for the decision of the court. The facts are the same in each. Both claimants are blacksmiths, employed by Keen, at day's wages, to work in his shop in making spikes, bolts, &c., for this barque. During the time they were thus working they did some work on other vessels, and some outside work at Keen's direction. At the end of each week they made a memorandum of their labor performed on the spikes, bolts, &c., which went into the barque. This the master finds correct, and for the amounts thus found respectively, they claim a lien. No payment had been made to them for their work. They were not mere laborers as in the case of *The Calisto*, Daveis, 29, where from the course of employment no presumption of contract to furnish labor for a particular vessel could arise ; nor were they employed as blacksmiths under a general agreement for labor without any specific application thereof to a particular vessel, as in *Read* v. *Hull of a New Brig*, 1 Story, 244. They were by their agreement to make the bolts, spikes, &c., for the barque in the yard in which she was building, and did other work occasionally at Keen's direction. As an accurate memorandum of the amount of this work was made, as found by the master, we think they were entitled to a lien.

10. The several claims of Henry, Dobbin, McLean and Sproule, were properly disallowed ; they having in their several certificates filed in the town clerk's office knowingly and wilfully claimed more than was due.

The result is that all the claims for lien by reason of labor and materials furnished, in the amounts found by the master are allowed, and are entitled to be paid from the fund, excepting the four rejected by him, and excepting also the claims of Cottrell and Jones, Andrew Sampson and others, and E. H. Sears. After the payment of the liens the mortgages are entitled in their order. The terms of the decree to be settled by a single judge.