FRANCIS E. PARKER & others *vs.* EDWARD G. NICKERSON.

Suffolk. Jan. 25. — Sept. 5, 1884. DEVENS & C. ALLEN, JJ., absent.

The defence to a bill in equity that the plaintiff's remedy is at law is waived by proceeding, without objection, to a hearing on the merits before a master.

If the defendant in a suit in equity is entitled, as of right, to have issues framed for a jury, he waives such right by not objecting to an order sending the case to a master for a hearing upon the merits.

If a suit in equity is sent to a master " to hear the parties and their evidence, find the facts, and report the same to the court," the master is not obliged to report the whole of the evidence ; but it is his duty, at the request of a party, to report so much of the evidence as is necessary to bring before the court any question of law raised at the hearing; and he may also report the evidence bearing upon any question of law, which, in his discretion, he thinks ought to be referred to the court.

A court of equity, after a case has been heard before a master, and his draft report is submitted to the parties, will not ordinarily, in the exercise of its discretion, order the master to file a report of all the evidence taken before him.

Upon exceptions to the report of a master, the excepting party is confined to the facts and evidence stated in the report.

It is the duty of a master appointed "to hear the parties and their evidence, find the facts, and report the same to the court," to report his conclusions of fact.

This court cannot revise the finding of a master, that the party who has the burden of proof has failed to sustain it, where the evidence is not reported.

A treasurer of a corporation, who has sold, for its benefit, a bond issued by it, and who is unable or refuses to disclose the exact amount for which he sold it, is chargeable in equity for at least the full market value of the bond at the time of the sale.

The receivers of a corporation are not estopped, in a suit in equity against the former treasurer of the corporation, to recover what is in fact due from him to the corporation, by the acceptance by the directors of the report of an auditing committee on the treasurer's accounts, where the report is based upon a fictitious entry on the books of the corporation to the credit of the treasurer, which was supposed by the committee to be a proper entry.

If the treasurer of a corporation fails to pay over to it money which he has collected, and the corporation is thereby compelled to borrow money, and to pay a rate of interest greater than six per cent, the treasurer is not liable in equity to pay on the sums due from him more than six per cent interest, if the bill does not seek to recover any profits he has made.

If the clerk of a bank who made entries in a book of the bank is dead, the book is admissible in evidence, upon proving his handwriting.

A treasurer of a corporation is not entitled to compensation for indorsing its promissory notes in order to procure their being discounted, in the absence of a contract on his part with the corporation to pay him therefor.

If the treasurer of a corporation buys a quantity of coal on his own account, with no intention of selling it to the corporation, and at a time when it is not his duty, as treasurer, to buy coal for the corporation, and he afterwards sells it to the corporation at a price which is higher than that which he paid, but which is its fair market value at the time, he is not chargeable in equity for the difference in price between what he paid for it and what he sold it at.

BILL IN EQUITY, filed November 20, 1871, by Francis E. Parker, Edward D. Sohier, and Samuel C. Cobb, who had been appointed by a decree of this court receivers of the East Boston Ferry Company, against the former treasurer of the company, for an account.

The bill alleged that the defendant, while treasurer, had received large sums of money belonging to the company, in selling bonds issued by the company, for which he had neglected to account; that he neglected to deposit in a bank certain sums of money received by him as treasurer, and used the same for his personal advantage; that he charged the company, for discounts alleged to be paid, larger sums of money than he actually paid; that he bought coal at one price and sold it to the company at a greater price; and that he used the revenue stamps belonging to the company in his own private business.

The answer denied the allegations of the bill; alleged that the defendant's accounts as treasurer had been approved and ratified by a committee appointed to examine them; and averred that, if the facts alleged in the bill were true, the plaintiffs had a complete remedy at law.

On April 28, 1879, the case was sent to a master, "to hear the parties and their evidence, find the facts, and report the same to the court."

At the hearing before the master, the oral evidence given was taken down and written out by a stenographer. The master heard the arguments of the parties on the merits of the case, and submitted to them a draft of his report. The defendant at this stage of the case filed a motion in court that the order of reference to the master be amended by adding at the end thereof the following: "together with such portions of the

evidence taken before him as either party may desire." This motion was overruled; and the defendant appealed.

The master filed his report on February 13, 1883, and exceptions thereto were filed by both parties. On February 23, 1883, the defendant filed a motion to recommit the report to the master, with an order to report all the evidence taken before him upon the issues raised which were a matter of exception. This motion was overruled; and the defendant appealed.

On March 20, 1883, the defendant filed a motion that issues be framed for a jury. This motion was overruled; and the defendant appealed.

The case then came on to be heard before *Holmes*, J., upon the bill and answer, the master's report, and the exceptions thereto. The defendant, before being heard upon his exceptions, moved the court to try the case upon evidence and documents then to be offered by the parties; but this motion was denied, subject to the defendant's objection and right to appeal. The defendant, upon his exceptions to the master's report, involving questions of evidence and facts not stated in the report, proposed to offer evidence in addition to that reported by the master to establish said exceptions, notwithstanding the findings of the master. Upon the objection of the plaintiffs, the judge declined to permit the introduction of such evidence; and thereupon reserved the questions arising in said cause upon the bill and answer, the master's report and the several exceptions thereto, and the defendant's offer of evidence in connection with the questions of law arising upon the defendant's appeals, for the consideration of the full court; such decree to be entered therein as justice and equity might require. The questions raised by the master's report and the exceptions thereto sufficiently appear in the opinion.

*J. O. Teele*, for the defendant.

*C. A. Welch &. C. W. Loring*, for the plaintiffs.

FIELD, J. The defendant's objection set up in the answer, that the plaintiffs' remedy was at law, if there was ever anything in it, was waived by proceeding, without objection, to a hearing before the master. *Jones* v. *Keen*, 115 Mass. 170.

The defendant complains that, under the practice shown in this case, all the issues in a cause may be sent to a master, and

may be determined by him, without any report of the evidence; and that, if his report is confirmed, the cause is in effect determined by a master, without any opportunity of trying before a single justice, or before the full court, the principal questions of law and fact involved in the cause ; and he contends that he has a right to have the cause tried in the first instance by a single justice, unless issues to a jury are framed, pursuant to the Pub. Sts. *c.* 151, § 11. Gen. Sts. *c.* 113, § 6. St. 1859, *c.* 237, § 1.

The statutes provide that " in proceedings in equity the evidence shall be taken in the same manner as in suits at law, unless the court for special reasons otherwise directs; but this shall not prevent the use of affidavits where they have heretofore been allowed." Pub. Sts. *c.* 169, § 66. Gen. Sts. *c.* 131, § 60. This was first enacted by the St. of 1852, *c.* 312, § 85. Before that statute, the chancery rules of this court provided that "all testimony shall be by deposition," except when an issue is tried by a jury; but it was competent for the court, " upon motion and cause shown, to order a trial or hearing before the court, on a matter of fact, upon oral testimony, with other competent evidence." Rule 29, 24 Pick. 417. The court adopted, as the outlines of its practice, the practice of the High Court of Chancery in England. Rule 34, 24 Pick. 419.

At that time, in England, the principal testimony in the cause was taken by examiners, upon written interrogatories, and any new testimony taken and used before a master was either taken upon written interrogatories, or *viva voce* before the master; but, if taken *viva voce*, it was reduced to writing by the master, " in order that the same may be used by the court if necessary." Orders in Chancery, No. 69, 2 Russ. Append. 24. It is therefore probable that in this Commonwealth, before the passage of the St. of 1852, *c.* 312, all the testimony taken before a master was reduced to writing by him.

The change in the mode of taking testimony in equity made by this statute did not affect the practice of the court to make references to a master, but it left the question whether the master should take the testimony in writing and report it to the court to be determined by the terms of the order of reference made in each cause.

The St. of 1859, *c.* 237, § 1, which provided that "all cases in equity, and all motions and other applications therein, whether interlocutory or final, shall, in the first instance, be heard and determined by some one justice of the Supreme Judicial Court," was not designed to affect the power of the court to make references to masters; but was designed to prevent any application for interlocutory or final decrees being made in the first instance to the full court. See St. 1859, *c.* 196, § 50. By the Rev. Sts. *c.* 81, § 20, (St. 1826, *c.* 109, § 1,) a single justice in vacation or in term time might hear motions and make interlocutory decrees, but the hearing for a final decree must be had by the court; and, before the Revised Statutes, it was thought that this must be by the court held by three or more justices; afterwards, it was considered that a hearing upon pleadings and proofs might be had by the court held by any one of the justices, pursuant to the Rev. Sts. *c.* 81, § 12. (St. 1804, *c.* 105, § 6.) An examination of the reports prior to the St. of 1859, *c.* 237, apparently shows that all of the equity cases reported, when heard upon demurrer, or upon bill and answer, or upon agreed facts, were heard in the first instance by the full court as raising issues in law; Rev. Sts. *c.* 81, § 13; and many of those heard upon a master's report, or upon pleadings and proofs, if the proofs were taken in writing, were heard by the full court, without having been first heard by the court held by a single justice. When the causes were heard by the court held by a single justice, there was no provision in the Revised Statutes for carrying to the full court questions of fact, although questions of law might be reported, or exceptions in matter of law taken. *Eames* v. *Eames*, 16 Pick. 141. *Parker* v. *May*, 5 Cush. 336, 356. *Hancock* v. *Carlton*, 6 Gray, 39. *Dorr* v. *Tremont National Bank*, 128 Mass. 349.

Since the St. of 1859, *c.* 237, all applications for interlocutory or final decrees or orders must first be made to a single justice, and an appeal to the full court is allowed from all interlocutory and final decrees, and provision is made for reporting to the full court all evidence orally taken before a single justice; but there is no statute and no rule requiring a report of the testimony taken before a master. It is left wholly to the discretion of the court in each case to determine whether there shall be any

reference to a master, and what shall be the terms of the reference; and the master is not bound to report all the evidence taken before him, unless the order of reference requires him to do so. From any order made by a single justice referring any matters in a cause to a master, or from an order refusing to require a master to report the evidence, or from an order refusing to send issues to a jury, an appeal lies to the full court; and except when the party is entitled as of right to a trial by jury, he is protected in these respects only by the judicial discretion exercised by the court.

The bill in this case was filed November 20, 1871. On April 28, 1879, the cause, being at issue, was referred to a master "to hear the parties and their evidence, find the facts, and report the same to the court." To this order it does not appear that any objection was made by either party, and no appeal was taken therefrom. After the master had submitted his draft report to the parties, the defendant filed a motion that the master be required to report "such portions of the evidence taken before him as either party may desire." This motion was overruled, and the defendant appealed. The master filed his report on February 13, 1883, and on February 23, 1883, the defendant filed a motion to recommit the report. This motion was overruled, and the defendant appealed. On March 20, 1883, the defendant filed a motion for issues to a jury. This motion was also overruled, and the defendant appealed. The oral evidence had, in fact, been taken and written out by a stenographer for the use of the master, by agreement of the parties.

It is unnecessary to consider whether this is a cause in which, under the Declaration of Rights, article 15, the defendant had a right to a trial by jury. It is well settled that such a right may be waived, and that in suits in equity it is treated as waived by the defendant unless seasonably asserted; and it is now settled that, after the whole cause has been referred to a master, and his report has been filed, it is too late to insist upon a trial by jury as of right. The application should have been made before the cause was referred, because the trial by a master of all the issues of fact is inconsistent with a trial by jury. *Atlanta Mills* v. *Mason*, 120 Mass. 244. *Nichols* v. *Ela*, 124 Mass. 333. *Hoitt* v. *Burleigh*, 18 N. H. 389.

The opinion expressed in *Shaw* v. *Norfolk County Railroad*, 16 Gray, 407, 409, that the proper time to make a motion for a jury was at the hearing before a single justice, after the master's report has been filed, was not necessary to the decision, and has not been followed.

As a matter of discretion, we think that the defendant, having acquiesced in the reference, having been heard before the master, and having waited until the master's report was filed, ought not to be permitted to re-try the cause before a jury. To permit it would be to permit the defendant to speculate improperly upon the advantages of different modes of trial, and the cause itself is not one with which a jury is specially fit to deal.

Although the order of reference did not direct the master to report any of the testimony to the court, it was his duty, at the request of a party, to report evidence so far as was necessary to bring intelligently before the court any question of law raised before him at the hearing. This, it seems, he has done. He could also properly report to the court the evidence bearing upon any question of law which, in his discretion, he thought ought to be referred to the court. This also he has done. It was open to either party during the hearing before the master to move the court to require him to report the whole testimony, or any part of it, if, in the progress of the hearing, either party considered that such a course was necessary or desirable. It was not the intention of the order of reference that the master should be required to report the whole testimony, and in a hearing upon somewhat long and complicated accounts this is not required, unless some good reason therefor is shown to the court. For the losing party to come in, for the first time, after the hearing before the master is closed and his draft report is known, and ask for a report of the evidence, is a proceeding never looked upon with favor, and we are not satisfied in this case, from an examination of the report or from any other source, that justice requires that the motions of the defendant to modify the order of reference, or to recommit the report, ought to have been granted.

The defendant also moved the court to try the cause upon evidence and documents then to be offered by the parties. This is a motion to discharge the report and the order of reference,

and to try the cause as if there had been no reference to a master. Except upon the claim of the plaintiff on account of the coal, we think no sufficient reason for adopting this course appears.

The defendant, upon his exceptions to the master's report, involving questions of evidence and facts not stated in the report, proposed to offer evidence in addition to that reported by the master to establish his exceptions, which was rejected. Without doubting the power of the court to re-try any of the questions of fact upon which the master had reported, which is equivalent to discharging the report and the order of reference as to those facts, still, upon exceptions to a report, the party is confined to the facts and evidence as they appear in the report, and the ruling was correct.

Under the order of reference, it was the duty of the master to report his conclusions of fact. *Dean* v. *Emerson*, 102 Mass. 480. *Jones* v. *Keen, ubi supra.*

There remain the exceptions to the report. The plaintiffs' single exception is, that the master should have awarded to them $200, and interest, for revenue stamps. The burden of proof was on the plaintiffs. The master has not reported the evidence; and of course we cannot say that the master ought to have been satisfied by the evidence that the defendant had misappropriated to his own use any revenue stamps belonging to the corporation.

The exceptions of the defendant, so far as they are open to him upon the master's report, are, first, to the findings of the master on the bond account.

It is unnecessary to determine whether the entry in the cashbook of one Daniels, who had died before the hearing, was admissible in evidence to prove the amount which the defendant had received from him for one of the bonds. We assume that it was not. The defendant was unable, or refused, to disclose the exact amount of money he received from Daniels for the bond for $5000 sold to him. Under these circumstances he is chargeable for at least its full market value at the time it was sold, and this the master has found to be ninety per cent of its par value, and accrued interest, which is the amount with which the master has charged the defendant.

In making up the bond account, the master has found that the defendant received moneys for the bonds sold, at various times from September 30, 1866, to November 30, 1866, and that he paid to the corporation certain sums on October 31, November 30, and December 19, 1866. The master has reckoned interest up to October 31, 1866, on the items occurring before that date, and carried forward the balance; and on this balance, as well as on all items occurring between October 31 and November 30, 1866, has reckoned interest up to November 30, 1866, and carried forward the balance; and on this balance has reckoned interest up to December 19, 1866, from which he has deducted the last credit, and found a balance on the whole account of $1994.15 due from the defendant on December 19, 1866.

No specific exception has been taken by either party to this method of computing interest on the bond account. The master's report must be taken to mean that the plaintiffs are entitled to receive simple interest on the balance of $1994.15 from December 19, 1866.

On the finding of the master that the auditing committees were not informed that an entry on the books of the corporation crediting the bond account with over $10,000 was in any part incorrect or fictitious, the plaintiffs were not estopped, by the acceptance by the directors of the reports of the auditing committees upon the accounts of the treasurer, from recovering on the bond account whatever was in fact due.

The next exceptions relate to the finding of the master upon the claim of the plaintiffs to recover interest on balances of cash belonging to the company and retained by the defendant. The master finds a balance of interest of $2762.45 due from the defendant on July 1, 1869, and that the plaintiffs are entitled to recover this sum with interest at six per cent per annum from that time. The interest on each item of this account is reckoned at nine per cent per annum from the date of the item up to July 1, 1869. The general rule is, that when money is used by an agent or trustee in breach of his trust, he may be compelled to account for the actual profits received by him, or for interest. If this were an action at law to recover money received by the defendant to the company's use, interest only at the rate of six per cent per annum could be recovered. In this case it is not

shown what the profits received by the defendant from the use of the money were, or that he received any profits. A court of equity cannot impose a penalty for the use of the money by the defendant, and it is not the rule of damages for detaining money that the defendant shall pay what it has cost the plaintiff to hire money in the mean time. We think that this account should be made up with interest at the rate of six per cent per annum, which is the legal rate here when no different contract is made. This can be done by taking two thirds of $2762.45, which is $1841.63, as the balance due July 1, 1869.

The remaining exceptions to this account of balances of cash are overruled.

The next exceptions relate to sums charged by the defendant to the corporation in procuring discounts at the banks upon its promissory notes. The master has found that the defendant in several instances charged the corporation more than he actually paid. The evidence as to the discounts paid at one of the banks is reported. One Cushman testified, for the plaintiffs, that he was the discount clerk at the bank, and, as such, had the custody of its books of record relating to discounts. He produced a book showing said discounts, and testified that the entries showing the discounts to the defendant were in the handwriting of a former discount clerk of the bank, who was dead. The defendant objected to the admissibility of these entries. The testimony of Cushman was admissible, and the entries in the books of the bank were admissible for the purpose of showing the amount of the discounts on the notes. They appear to have been the customary record of the transactions of the bank. *Union Bank* v. *Knapp*, 3 Pick. 96. *Washington Bank* v. *Prescott*, 20 Pick. 339.

The master was warranted by the facts found by him in refusing to allow the claim of the defendant for indorsing the notes of the corporation which were discounted. It appears that there was no evidence of any contract that the defendant should be paid for his indorsements. It does not appear that the defendant ever made any claim against the company for an allowance on account of the indorsements. He simply charged the company as discounts more than the sums actually paid or retained.

The remaining exceptions are to the finding of the master that the plaintiffs are entitled to recover $900, with interest, as

the net profits to the defendant upon coal sold to the company. Upon the facts found by the master it is evident that the sale of the coal was really made by the defendant to the company. This coal had been purchased by the defendant in August, September, and October, 1868, upon speculation, at the price of $7.25 per ton, and was sold to the company on or about January 6, 1869, for $9.25 per ton. The rule is stated in *Parker* v. *Nickerson*, 112 Mass. 195, that " a trustee or agent cannot purchase on his own account what he sells on account of another, nor purchase on account of another what he sells on his own account, . . . . and, if he does so, the *cestui que trust* or principal, unless upon the fullest knowledge of all the facts he elects to confirm the act of the trustee or agent, may repudiate it, or he may charge the profits made by the trustee or agent with an implied trust for his benefit." But upon what principle are the profits to be estimated? If the defendant originally bought this coal for the purpose of selling it to the company, and particularly, if at that time the company had funds in his hands with which to buy the coal, and it was his duty to buy it for the company, there is no difficulty in holding, that, in originally buying the coal, he must be treated as an agent of the company, and a trustee for the profits which are the difference between what he paid for the coal and what he received of the company, less the necessary intervening expenses of storage, wharfage, wheeling, insurance, &c. *Tyrrell* v. *Bank of London*, 10 H. L. Cas. 26. *Kimber* v. *Barber*, L. R. 8 Ch. 56.

But if he did not originally buy the coal for the purpose of selling it to the company, and did not buy it at a time when it was his duty as treasurer to buy coal for the company, it is difficult to see how he can be treated as an agent of the company in making the original purchase. If the defendant rightfully bought the coal on his own account, and then subsequently, as agent of the company, bought the coal of himself, the contract could undoubtedly be rescinded by the company if it could restore the coal, and, if it could not, the company would not be bound to pay the price fixed by the defendant, but only bound to pay what was a reasonable price at the time; but this is very different from holding that it is only bound to pay what the defendant paid for it some months before. *Erlanger* v. *New*

*Sombrero Phosphate Co.* 3 App. Cas. 1218, 1234.    *Great Luxembourg Railway* v. *Magnay*, 25 Beav. 586, 595.

If the defendant had been a coal-dealer, and had bought in the summer for his own use different cargoes of the same kind of coal at $4, $5, and $6 a ton respectively, and in the winter had bought of himself for the company a lot of this coal when it was worth in the market $9 a ton, and the company had used the coal, it would be a strange conclusion of law to hold that the company should pay only what the coal originally cost the defendant with intervening charges, and that this should be determined by ascertaining the particular cargo from which the lot sold was taken. The report of the master leaves it uncertain upon what principles of law he finds the defendant liable for the difference between what the coal cost him, and the price paid by the company. He does not find that the defendant bought the coal with the intention of selling it to the company, or that, at the time he bought it, it was the defendant's duty to buy coal for the company. The master does not find sufficient facts to warrant the conclusion he draws. The defendant's counsel says in his brief, " that the corporation was obliged to buy an extra supply of coal in January, 1869, because the city ordered it to run a second line of boats, and but for that order the corporation would not have needed, and would not have bought, the coal from the defendant or any one else." As the evidence on this point is not reported, we know nothing about it. We are satisfied that on this claim, unless the plaintiffs choose to remit it, a hearing ought to be had before a single justice, and that for this purpose he may order all the evidence on this claim to be reported by the master, if it is still in the hands of the master, and may hear additional evidence, or may hear the whole evidence anew.

The result is, that the plaintiffs will be entitled to recover of the defendant the sums of $1994.15, $1841.63, and $630.73, with simple interest, at the rate of six per cent per annum, from December 19, 1866, July 1, 1869, and October 18, 1869, respectively; but that no decree can now be made until the determination by a single justice of the defendant's liability on account of the coal, unless this claim is remitted. The cause is remanded to the court sitting for the county, that this claim, unless remitted, may be heard and determined, and a decree entered.

*So ordered.*