FRANCIS E. PARKER & others *vs.* EDWARD G. NICKERSON & others.

The directors of the East Boston Ferry Company bought a steamboat in their individual capacity, and so owning it, bought it of themselves, on behalf of the company as directors, at a large advance upon its cost and value. *Held,* that the transaction was fraudulent; that the profits made by them enured to the benefit of the company, and that the company could recover them with interest.

The directors of the East Boston Ferry Company voted that the treasurer be authorized to purchase a certain steamboat "at cost of boat and repairs." This steamboat was the property of the Citizens' Ferry Company, of which company they were also the directors and the only stockholders. As the Citizens' Ferry Company they sold the boat to the East Boston Ferry Company, at a sum much in excess of the "cost of boat and repairs," and divided the proceeds among themselves. *Held,* that the transaction was fraudulent; that the profits made by them enured to the benefit of the East Boston Ferry Company, that that company could recover of them personally all that was received by them above the "cost of boat and repairs"; that money expended by them for professional services and expenses in obtaining the charter of the Citizens' Ferry Company, and paid as salaries to themselves as officers of that company, was not a part of "the cost of boat and repairs," and that they were entitled to charge but six per cent. interest in making up the amount of the payments made on account of the boat.

BILL IN EQUITY brought by the plaintiffs, who had been appointed by a decree of this court receivers of the East Boston Ferry Company, against Edward G. Nickerson, Albert Bowker, and Mark Googins, three of the directors of the company, praying that they might render a true account, and be decreed to pay over to the plaintiffs all sums received by them in contravention of the equitable obligations imposed upon them by their trust as directors. The material facts are stated in the opinion of the court.

*C. W. Loring,* for the plaintiffs.

*G. A. Somerby,* for the defendant Nickerson.

*E. Avery,* for the defendant Googins.

MORTON, J. The only questions, which have been argued in this case, are as to the liability of the defendants for the profits

made by them upon the sale to the East Boston Ferry Company, of the steamboats John Adams and Jefferson. The evidence is voluminous, but the facts which it proves, so far as necessary to the decision of the case, are few and simple.

1st. The purchase of the John Adams was made in October, 1867, the vote of the directors of the East Boston Ferry Company authorizing it having been passed October 22, 1867. At this time the directors were five in number, being the three defendants, and Curtis and Lyons. The defendants were a majority of the board and thus had a controlling influence over its action. But further than this, the evidence clearly shows that the other two directors were merely the instruments of the defendants, elected upon their nomination, and having but little, if any, interest in the stock. It is clear that they were elected for the purpose of carrying out the projects of the defendants, and were under their direction. Practically the three defendants were the board of directors. After they were elected directors they bought in their own name the steamboat John Adams, and afterwards, acting as directors under the vote above referred to, they bought her on behalf of the East Boston Ferry Company, from themselves, at a price much greater than what she had cost them, and we are satisfied, much greater than her real value. This transaction was fraudulent in law. As a general rule, a trustee or agent cannot purchase on his own account what he sells on account of another, nor purchase on account of another what he sells on his own account. He cannot unite in himself the opposite characters of buyer and seller. And if he does so, the *cestui que trust* or principal, unless upon the fullest knowledge of all the facts he elects to confirm the act of the trustee or agent, may repudiate it, or he may charge the profits made by the trustee or agent with an implied trust for his benefit. *Michoud* v. *Girod,* 4 How. 503. *Gillett* v. *Peppercorne,* 3 Beav. 78. *York & Midland Railroad* v. *Hudson,* 16 Beav. 485. *Bentley* v. *Craven,* 18 Beav. 75. *Kimber* v. *Barber,* L. R. 8 Ch. 56. The case of the purchase of the John Adams clearly falls within this rule. The defendants were both buyers and sellers. Acting on their own account, they sold the steamboat to themselves acting as directors, at a large advance

upon its cost. All the profits thus made, in equity enured to the benefit of the company, and the receivers are entitled to recover them in this suit.

2d. The same considerations apply to the purchase of the Jefferson. The bill of sale of this steamboat to the East Boston Ferry Company was in form from the Citizens' Ferry Company. But it was a mere form. The defendants were the only persons who had any interest in the transaction, and the profits were wholly divided among themselves. This last named company had a formal organization under its charter, the defendants and Curtis and Lyons being directors. No certificates of stock were ever issued, and there were no stockholders except the defendants. Using the name of the Citizens' Ferry Company, the defendants sold to themselves, as directors of the East Boston Ferry Company, the Jefferson, at a large profit, which they divided. The case of the Jefferson differs from that of the John Adams in the fact that the defendants bought the steamboat before they were elected directors of the East Boston Ferry Company. But this fact does not, under the circumstances of this case, change the result. The vote under which the Jefferson was bought was " that the treasurer be and hereby is authorized to purchase the steamer Jefferson at cost of boat and repairs, not exceeding fifty-six thousand dollars." The evidence shows that such of the stockholders as had any knowledge of the transaction understood that she was to be sold by the defendants to the company at her cost and repairs. It was a fraud for the defendants to pay themselves more, and the company is entitled to recover all that the defendants received in excess of her cost and repairs, without regard to the question of her value at the time.

3d. The ground taken by the defendants that the East Boston Ferry Company accepted and confirmed the purchase of their two steamboats, with a full knowledge of all the facts, is not sustained by the proof. The books of the company, to which the stockholders have access, show the price paid for them, but there is no evidence that any member of the company, except the defendants, knew that such price was more than the cost, or that the defendants had made a profit out of the transaction. Some of the stock-

holders suspected these facts in 1868, but the defendants did not furnish full information of the transactions until they were com· pelled to do so in this suit.

The result is that the plaintiffs are entitled to recover the profits made by the defendants upon the two steamboats, with interest from the times when the respective payments for them were made by the East Boston Ferry Company.

*Decree accordingly.*

The following decree was thereupon entered :

" This cause came on to be heard upon the pleadings and proofs in the cause, and was argued by counsel for the plaintiffs and defendants ; and thereupon, upon consideration thereof, this court doth declare that the defendants, while directors of the East Boston Ferry Company, and acting for that company, made a profit by a sale from themselves of the steamers John Adams and Jefferson to the said East Boston Ferry Company, and that said transaction was fraudulent in law, and the profits belonged to the East Boston Ferry Company. And it is ordered, adjudged, and decreed by the court, that the defendants pay to the plaintiffs the sum of eighteen thousand dollars, the profits made by them in the sale of the John Adams, with interest from the thirty-first day of December, 1867, and that they pay the sum of six thousand dollars, the profit made by them in the sale of the Jefferson, with interest from the twenty-second day of June, 1866 ; and that the case be referred to Lewis S. Dabney, master in chancery, to determine what further, if any, profits were made by the defendants from said sale of the said Jefferson ; and that the master be clothed with full power to examine as well the parties as any other witnesses under oath in the premises ; to require the production of all vouchers, books of account, records, papers, and other documents pertinent and proper in the premises ; and that he state a full account of said further profits, if any, made in the sale of the Jefferson ; and that he be clothed with all the usual powers and authorities of a master in all things touching the premises.

" And all further orders and decrees are reserved for the con· sideration of the court."

This case came again before the court at the November session, 1874, upon the master's report.

*C. A. Welch & C. W. Loring*, for the plaintiffs.

*G. A. Somerby*, for the defendant Nickerson.

*E. Avery*, for the defendant Googins.

MORTON, J. At the former hearing in this case it was decided that the defendants were liable for all the profits made by them in the sale of the steamer Jefferson. The proofs showed that they had divided among themselves, as profits, six thousand dollars, and the case was referred to a master " to determine what further, if any, profits were made by the defendants, from said sale of the said Jefferson." The case now comes before us upon the master's report.

1. No objection is made to the finding of the master that the sum of $1009.96, being the balance of cash in the hands of the defendant Nickerson, was a part of the profits made by the defendants in addition to the six thousand dollars. They are therefore liable for this amount.

2. The master finds that the defendants have charged, as part of the cost of the Jefferson, several sums amounting to $3896.13, which sums were expended by the defendants for professional services and other expenses, in obtaining a charter for, and organizing the Citizens' Ferry Company, and for the salary of the defendant Nickerson, as treasurer and clerk of said company: and he further finds that unless these sums are properly chargeable as a part of the cost of the steamer, they should be added to the " further profits " made by the defendants from the sale. The vote of the East Boston Ferry Company was " that the treasurer be and hereby is authorized to purchase the steamer Jefferson at cost of boat and repairs, not exceeding fifty-six thousand dollars." The defendants professed, and agreed, to sell the steamer to the company at the cost of the boat and repairs. There is no principle by which they can charge the company with the expenses of organizing the Citizens' Ferry Company, and the salary of its officers, which in no sense form any part of the cost of the boat or of its repairs. They are therefore liable for this amount as found by the master.

3. It appeared that, as a part of the transaction of the purchase of the Jefferson, the East Boston Ferry Company gave the defendants their notes for $26,301. To make up this amount the defendants included a charge of $777.18, being for interest at the rate of nine per cent. upon advances and payments made by them. If they had no right to charge more than six per cent., it follows that they overcharged the cost of the boat one third of the above amount, and are liable for such overcharge as a part of the profits received by them. This includes the two items of $197.58, and of $61.50, which the master finds that the defendants are liable for, if they can charge interest only at six per cent. Under the circumstances of this case, we are of opinion that they cannot charge at a rate greater than six per cent. If the defendants had in good faith made a contract for the allowance of nine per cent. interest with the company, through, or with the knowledge of, its other officers or stockholders, such contract might be valid. But no such contract was made. They assumed, acting as directors of the company, to pay to themselves as individuals, interest at the rate of nine per cent. Such a transaction cannot be treated as a valid contract binding on the company. They are therefore entitled to charge only the rate of interest fixed by the law in the absence of any special agreement for a larger rate.

This disposes of all the questions raised by the master's report. It follows that the plaintiffs are entitled to a decree for all the sums found by the master in accordance with the principles above stated, amounting to $5165.17, with interest thereon from April 16, 1867. *Decree accordingly.*