The New York Trust Company, as Trustee under a Deed of Trust from George F. Underwood et al., Appellant, *v.* American Realty Company et al., Respondents.

Contract — bills, notes and checks — corporations — directors — counterclaim — corporation may not repudiate contract made with director and still retain its benefits — director may sell his property to corporation at profit without being obliged to account — action to recover upon promissory notes given by corporation as purchase price of land — counterclaim in so far as it alleges that land was sold to it by the trustee of one of its officers and directors who made an exorbitant profit from the sale does not state a cause of action in the absence of rescission — cause of action stated in so far as it alleges that part of land was purchased by its officer and director with knowledge that corporation intended to acquire it — corporation may require transfer of land to it at cost and an accounting for profits realized by sale — contention that cause of action does not arise out of transaction set forth as foundation of plaintiff's claim and, therefore, may not be pleaded as a counterclaim cannot be sustained.

1. A corporation may not repudiate the obligations of a contract made with a director and at the same time retain its benefits. If the contract was valid the corporation must pay the agreed price; if invalid the corporation must rescind or repudiate the contract in its entirety. A director who may sell or retain property at his will may also determine the price which will induce him to sell to the corporation. Profit made is the fruit of his ownership, not of his agency, and he may not be called upon to account for such profits. If the contract which fixed the amount of the seller's profits is not rescinded or void, the fact that the profits are so large that they might be called " exorbitant " is ordinarily immaterial.

2. In an action to recover upon promissory notes executed and delivered by defendant realty company and guaranteed by defendant paper company as the purchase price of lands which had been conveyed to the plaintiff under a deed of trust and by it sold to the realty company, a counterclaim, in so far as it is based upon the theory that at the time of the sale the maker of the trust deed, which was principally for the benefit of his family, stood in a highly fiduciary

14

relation to the defendants and that in disregard of his duty of undivided loyalty and fidelity to them he took upon such sale an indirect and exorbitant profit, does not state a cause of action in the absence of rescission. If the defendants retain the land to which they have no right or title except by virtue of the contract with the plaintiff they must pay the agreed purchase price. If the contract of purchase is rescinded the principal has no title to the property or right to retain it. If the principal fails to return the property he may not claim that the contract was made without authority.

3. The counterclaim, however, in so far as it alleges that the maker of the trust deed purchased part of the lands in question with knowledge that defendant paper company contemplated and was considering purchase thereof, states a cause of action. If that knowledge induced the purchase by its fiduciary of land; if he acquired it with intent to divert into his own coffers prospective benefit which the corporation expected to acquire; if he bought for himself when duty to the corporation required him to act only for it, then the corporation might insist that his title so acquired was held for its benefit and that he transfer the property to it at cost. He could not rid himself of this trust by transferring the property to the plaintiff, which took title subject to the same obligation. If the defendants can sustain these allegations by proof they may insist that the plaintiff account for profits realized by sale of that part of the property.

4. A contention by plaintiff that the cause of action pleaded is not " on contract " and does not arise out of the " contract or transaction set forth as the foundation of the plaintiff's claim or connected with the subject of the action," and, therefore, may not be pleaded as a counterclaim (Civ. Pr. Act, § 266), cannot be sustained. The action is founded upon notes given as the consideration for the purchase of land. If the allegations contained in the counterclaim can be established the plaintiff may be compelled to return part of the purchase price represented by the notes because of wrong committed in exacting them as stipulated price of the land. Under such circumstances a construction of the statute which would preclude the defendants from establishing their rights in an action upon the notes is too narrow.

*New York Trust Co.* v. *American Realty Co.*, 215 App. Div. 416, affirmed.

(Argued November 15, 1926; decided December 31, 1926.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial depart-

ment, entered February 5, 1926, which reversed an order of Special Term granting a motion by plaintiff for judgment on the pleadings and denied said motion.

The following questions were certified: " 1. Does the first counterclaim state facts sufficient to constitute a cause of action?  2. Is the first counterclaim one which may be properly interposed in this action?  3. Does the second counterclaim state facts sufficient to constitute a cause of action?  4. Is the second counterclaim one which may be properly interposed in this action? "

*Frank C. Laughlin* and *William E. Sims* for appellant. The first counterclaim does not state a cause of action. (*Gamble* v. *Queens County Water Co.*, 123 N. Y. 91; *Billings* v. *Shaw*, 209 N. Y. 265; *Globe Woolen Co.* v. *Utica Gas & Elec. Co.*, 224 N. Y. 483; *Barr* v. *New York, Lake Erie & Western R. R. Co.*, 125 N. Y. 263; *Duncomb* v. *N. Y., etc., R. R. Co.*, 84 N. Y. 193; *Seymour* v. *Spring Forest Cemetery Assn.*, 144 N. Y. 333; *Parker* v. *Nickerson*, 137 Mass. 487.)   The first counterclaim is not one which can properly be interposed in this action.  (*Otis* v. *Shants*, 128 N. Y. 45; *Vassar* v. *Livingston*, 13 N. Y. 248; *Pease Oil Co.* v. *Monroe Oil Co.*, 78 Misc. Rep. 285; 158 App. Div. 951; *Fulton Co. G. & E. Co.* v. *Hudson River T. Co.*, 200 N. Y. 287; *Vulcan Metals Co.* v. *Simmons Mfg. Co.*, 248 Fed. Rep. 853; *Adams* v. *Schwartz,* 137 App. Div. 230; *Stevenson* v. *Devins*, 158 App. Div. 616.)   The second counterclaim does not state facts sufficient to constitute a cause of action.  (*Kranz* v. *Lewis*, 115 App. Div. 106; *Van Slochem* v. *Villard*, 207 N. Y. 587; *Ellis* v. *Andrews*, 56 N. Y. 83.)

*Theodore Kiendl* and *George A. Brownell* for respondents. The first counterclaim contained in the defendants' amended answer states facts sufficient to constitute a cause of action.  (*Douglass-Whisler Brick Co.* v. *Simpson*, 233 Penn. St. 515; *Parker* v. *Nickerson,* 112 Mass.

195; *Munson* v. *Syracuse, G. & C. R. Co.*, 103 N. Y. 58; *Asphalt Construction Co.* v. *Boulser*, 150 App. Div. 691; 210 N. Y. 643; *Billings* v. *Shaw*, 209 N. Y. 265; *Woolson Spice Co.* v. *Columbia Trust Co.*, 110 Misc. Rep. 687; Fletcher on Corp. §§ 2340, 2359; Thompson on Corp. [2d ed.] §§ 1215, 1216, 1220; *Redhead* v. *Parkway Driving Club*, 148 N. Y. 471; *Voorhees* v. *Nixon*, 72 N. J. Eq. 791; *Devone* v. *Tanning*, 2 Johns. Ch. 252; *Reed* v. *Aubrey*, 91 Ga. 435.)  Both the first and second counterclaims are properly interposed in this action. (*New York Trust Co.* v. *American Realty Co.*, 215 App. Div. 416; *Siebrecht* v. *Siegel-Cooper Co.*, 38 App. Div. 549; *Laska* v. *Harris*, 215 N. Y. 554; *Kneeland* v. *Pennel*, 96 N. Y. Supp. 403; *Vandervort* v. *Mink*, 113 App. Div. 601; *Seidman* v. *McCahill*, 182 N. Y. Supp. 800.)

Lehman, J.  The complaint herein sets forth seven separate causes of action at law.  The first cause of action is for the unpaid principal and interest of a note for $100,000 dated November 12th, 1920, and payable December 1st, 1924, executed and delivered by the American Realty Company to the plaintiff and guaranteed by the International Paper Company.  The remaining causes of action are for unpaid interest on six other notes of identical form but maturing serially in successive years thereafter.  The defendants have served an answer containing two counterclaims.  The plaintiff has moved for judgment dismissing the counterclaims.  The order granting such motion has been unanimously reversed by the Appellate Division which has granted leave to appeal upon certified questions.

The defendants allege in the first counterclaim that the defendant American Realty Company purchased in November, 1920, from the plaintiff more than fifty-five thousand acres of timberland.  The consideration agreed upon for the sale of this land was the sum of $1,364,895, to be paid to the plaintiff as trustee under a deed of

trust from George F. Underwood and Jennie A., his wife, dated July 28th, 1920, and in addition the execution of a contract between the said George F. Underwood and the International Paper Company which owned all the capital stock of the American Realty Company. One million dollars of the said purchase price was paid in ten notes of American Realty Company guaranteed by International Paper Company, each in the principal amount of $100,000 and maturing serially one on December first of each year from 1921 to 1930, both inclusive. Three of the said notes have been paid. The remaining seven are those referred to in the complaint herein.

George F. Underwood, named with his wife as the grantor of the deed of trust to the New York Trust Company, was a director of the International Paper Company from August 28th, 1901, until his death on or about August 6th, 1923, and was from October 24th, 1906, until his death a member of the executive committee of said company. He was also from September 25, 1918, until his death the president and a director of the American Realty Company. The conveyance of the timberlands to the plaintiff under the deed of trust of July, 1920, from George F. Underwood and Jennie A. Underwood, his wife, was gratuitous. The land was to be sold as soon as possible. The trust deed directed that certain small amounts of the purchase price be paid over to designated charitable and other institutions and that the great bulk be paid or applied either by outright gift or through the establishment of trust funds, to the benefit of the immediate family of George F. Underwood. The largest beneficiary under the said trust is his wife.

The counterclaim is based upon the theory that at the time of the sale of the timberlands, Underwood stood in a highly fiduciary relation to the defendants and that in disregard of his duty of undivided loyalty and fidelity to them he secretly took upon such sale an indirect profit which, in the counterclaim, is characterized as " exorbi-

tant," and that breach of trust on the part of Underwood gives rise to an affirmative cause of action against the plaintiff who benefited from it. The allegations of wrongdoing contained in the counterclaim are somewhat vague and indefinite. The rule by which the defendants arrive at the amount of damages which they demand is not disclosed. General allegations are in some instances merely conclusions and in other instances limited by more specific allegations. Perhaps the counterclaim is vague and indefinite because the defendants are themselves in doubt as to where they can find basis for recovery herein; yet some facts have been pleaded which if proven would sustain some recovery, though not for all the damages claimed by the defendants.

In spite of general allegations of concealment by Underwood of matters which should have been disclosed by him to the defendant corporations, of which he was a director, and in spite of claim that " secret " profits were made, it appears conclusively that when the defendants respectively made and guaranteed the notes in suit, Underwood did not hide from them his relation to the plaintiff and his indirect interest in the purchase price. The counterclaim alleges that " it was by him that the offer of sale was made to the International Paper Company and its subsidiary, and throughout the negotiations he acted as sole agent for the New York Trust Company, Trustee." The notes given show on their face that the trustee held title under a deed of trust from George F. Underwood and Jennie A., his wife, dated July 28th, 1920, and recorded. They even recite that the deed of trust is " recorded in Somerset [Maine] Registry of Deeds, Vol. 363, Page 1." Under such circumstances it may not be said that the defendants were fraudulently kept in ignorance of the fact that under the deed of trust, near relatives of Underwood were the principal beneficiaries. If his interest in effectuating a sale in behalf of the plaintiff might interfere with his obligations as officer

and director of the defendants, it does not appear that the possible conflict was not disclosed. Though it is said that " throughout the deal he was acting for both the selling and buying parties," it does not appear that he even voted as director of the defendant corporations to purchase the land. It is alleged that the officers and directors of the corporations relied on his judgment, integrity and advice in matters pertaining to the purchase of and the general policy regarding timberlands and that he " had general charge of such purchases, and exercised a dominant position in relation thereto." It is further alleged that it was " largely through the representations and recommendations of the said Underwood, acting in his capacity of officer and director of the defendant companies with particular charge of their timberland purchases as aforesaid, that the purchase by International Paper Company and American Realty Company was effected."

We assume that if the defendants, by reason of these circumstances, were induced to make a bargain which subsequently they discovered was not advantageous to them, they might rescind their contract of purchase. (*Barr* v. *N. Y., L. E. & W. R. R. Co.*, 125 N. Y. 263; *Munson* v. *Syracuse, G. & C. R. R. Co.*, 103 N. Y. 58; *Wendt* v. *Fischer*, 243 N. Y. 439.) The corporations have not chosen to rescind. Indeed they do not now urge that the contract of sale may not have been advantageous. They do say that the agreed consideration paid for the timberlands " was greatly in excess of the fair value of the said lands, and also greatly in excess of the amount paid by Underwood in acquiring them, resulting through the benefit to the wife and members of the immediate family of George F. Underwood and to the said Underwood himself in an exorbitant profit to the said Underwood. The amount of the said exorbitant profit was not disclosed to American Realty Company or International Paper Company," but it does not appear that

the lands might not be of such use to the corporations in their business that the corporations would not be willing to pay even now more than the fair value of such land if such payment was required for its acquisition. Since the defendants retain the land to which they have no right or title except by virtue of the contract with the plaintiff they must pay the agreed purchase price. The allegations of the counterclaim are insufficient as a defense to the action and are not pleaded as a defense. If they are sufficient to constitute a cause of action which may be pleaded as a counterclaim, it must be upon the theory that Underwood, because of his fiduciary relations to the corporation may be compelled to account for any profits he might make upon a sale of his property to the corporations or for excess of price received over the fair value of the property, and that the plaintiff, to whom the lands were conveyed, perhaps in contemplation of anticipated sale to the corporation, may not retain more than the price which Underwood could properly exact for the property.

Undoubtedly it has frequently been held that a director or officer of a corporation must account to the corporation for profits received in disregard of duty owed to the corporation. (*McClure* v. *Law,* 161 N. Y. 78; *Jackson* v. *Ludeling,* 21 Wall. [U. S.] 616.) The remedy has been granted at times even in cases where the corporation does not rescind the transaction through which such profits have been made by the delinquent trustee or agent. In such cases, however, affirmation of authority of director or agent to bind the corporation was not inconsistent with claim of wrong committed by him in the course of his representation of the corporation. Remedy there is granted for wrong committed by an unfaithful agent in accordance with general principles applicable to recognized agency. " All profits made and advantage gained by the agent in the exeaution of the agency belong to the principal. And it matters not whether such profit

or advantage be the result of the performance or of the violation of the duty of the agent if it be the fruit of the agency." (Mechem, Law of Agency [2d edition], section 1225.) An agent for a buyer must account to his principal for the amount allowed by the seller to the agent for his services in making the sale. (*McMillan* v. *Arthur*, 98 N. Y. 167.) On analogous principles an agent or director may be compelled to account for profits made on the sale of property to his principal, though the principal retains the property sold where, even before such sale, the agent or director was holding the property as trustee for the principal. In such case, even though the corporation repudiates the act of the director as its agent upon the sale of the property at a profit, it would still be entitled to hold the property conveyed to it because in equity ownership by the agent was for the benefit of the corporation and the fruits of such ownership belong to it. (See *Parker* v. *Nickerson*, 112 Mass. 195; *Watson* v. *Bayliss*, 62 Wash. 329; *Willink* v. *Vanderveer*, 1 Barb. 599; *Danville, H. & W. R. Co.* v. *Kase*, 17 Phila. 332.)

Different question arises where the agent sells to his principal at a profit property which the agent might have retained for himself or sold to a stranger. If the contract of purchase is rescinded the principal has no title to the property or right to retain it. If the principal fails to return the property he may not claim that the contract was made without authority. A corporation may not repudiate the obligations of a contract made with a director and at the same time retain its benefits. If contract with the director was valid the corporation must pay the agreed price; if invalid the corporation must rescind or repudiate the contract in its entirety. A director who may sell or retain the property at his will may also determine the price which will induce him to sell to the corporation. Profit made is the fruit of his ownership, and not of his agency. (*Burland* v. *Earle*,

1902 A. C. 83; *Matter of Lady Forrest* [*Murchison*] *Gold Mine, Ltd.*, 1901, 1 Ch. 582.) The agent or director may, therefore, not be called upon to account for such profits. If the contract which fixed the amount of the seller's profits is not rescinded or void, the fact that the profits are so large that they might be called " exorbitant " is ordinarily immaterial. In similar situation like result has generally been reached by the courts of this country. (See *Kilbourn* v. *Sunderland*, 130 U. S. 505, 517; *Ely* v. *Hanford*, 65 Ill. 267.) It is true that in some cases a corporation has been allowed to repudiate entirely the obligation of a contract made with or through a director, though restoration of the property received under the contract was not practicable, and it has been held in such cases that after such repudiation the seller might receive or retain only the reasonable value of the property transferred to the corporation. (*Parker* v. *Nickerson*, 137 Mass. 487; *Voorhees* v. *Nixon*, 72 N. J. Eq. 791; *Oliver* v. *Rahway Ice Co.*, 64 N. J. Eq. 596.) We do not decide whether under similar circumstances we would hold that obligation of contract which was void or voidable might be repudiated without return of property received thereunder upon payment of the reasonable value of such property. Here no such circumstances are pleaded and no claim of right to repudiate or rescind the contract asserted. It might even be argued that the facts pleaded in the counterclaim show ratification of the contract. The defendants claim only damages for Underwood's alleged breach of trust towards them, though validity of the contract which resulted therefrom is not attacked. For property which belonged wholly to Underwood, Underwood might lawfully exact from a purchaser any price he could obtain and retain any profits he could acquire. As to such property, legal wrong, if any, on the part of Underwood consisted only in his making a contract for the benefit of his family or himself with corporations to which he owed duty of undivided loyalty. So long

as the defendants cling to the benefit of the contract so made and assert rights against the plaintiff which they derive only from such contract, they may not claim that their directors and agents acted wrongfully or caused them damage by imposing upon them corresponding contractual obligations.

Underwood had owned some of the land sold for some years. There is no claim that in buying these lands he acted as agent for the corporation or that the corporation had any interest therein, legal or equitable. Part of the land he purchased in the year 1919. The defendants allege that he purchased this part with knowledge that " International Paper Company contemplated and was considering the purchase of the tracts." If that knowledge induced the purchase by Underwood of land; if he acquired it with intent to divert into his own coffers prospective benefit which the corporation expected to acquire; if he bought for himself when duty to the corporation required him to act only for it, then the corporation might insist that his title so acquired was held for its benefit. (*Robinson* v. *Jewett,* 116 N. Y. 40; *Parker* v. *Nickerson,* 112 Mass. 195.) Here the allegations of the counterclaim may be construed as stating that Underwood bought with intention to resell to the corporation. That he might not do. Having so bought, he was under duty, on request of the corporation, to transfer the property to the corporation at cost. He could not rid himself of this trust by transferring the property to the plaintiff. The plaintiff took title subject to the same obligation. If the defendants can sustain these allegations by proof they may insist that the plaintiff account to them for profits realized by sale of that part of the property which the plaintiff was under obligation to transfer at cost. To that extent the first counterclaim, therefore, states facts sufficient to constitute a cause of action.

All the allegations of the first counterclaim are realleged in the second counterclaim. Other allegations, presum-

ably intended as a cause of action based on fraudulent representations, are also pleaded. On their face they are insufficient for such purpose. There is not even an allegation of what representations were actually made. The second counterclaim contains allegations constituting the same cause of action as the first but adds nothing thereto.

The plaintiff also urges that the cause of action pleaded is not " on contract " and does not arise out of the " contract or transaction set forth as the foundation of the plaintiff's claim or connected with the subject of the action," and, therefore, may not be pleaded as a counterclaim. (Civil Practice Act, section 266.) That contention finds support in the decision in *Vulcan Metals Co.* v. *Simmons Mfg. Co.* (248 Fed. Rep. 853). We reach opposite conclusion. The action is founded upon notes given as the consideration for the purchase of land. If the allegations contained in the counterclaim can be established the plaintiff may be compelled to return part of the purchase price represented by the notes in suit because of wrong committed in exacting them as stipulated price of the land. Under such circumstances a construction of the statute which would preclude the defendants from establishing their rights in an action upon the notes seems to us too narrow.

The order of the Appellate Division should be affirmed, with costs, and the certified questions answered in the affirmative.

HISCOCK, Ch. J., CARDOZO, POUND, MCLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Order affirmed, etc.