**CRAFTSMAN FINANCE & MORTGAGE CO., Inc., v. BROWN et al.**

District Court, S. D. New York.
Nov. 17, 1945.

William Rosenfeld, of New York City, for plaintiff.

Reed, Truslow, Crane & De Give, of New York City (William G. Mulligan and Milton Kaplan, both of New York City, of counsel), for defendants Russell R. Brown and Stewart M. Seymour.

Humes, Buck, Smith & Stowell, of New York City (John F. Kiernan, of New York City, of counsel), for defendant Stanhope Foster, individually and as a partner of Foster & Co.

Garey, Desvernine & Garey, of New York City (Ambrose V. McCall and Jacob J. Rosenblum, both of New York City, of counsel), for defendant Samuel L. Westerman, individually and as a partner of Foster & Co.

Edwin M. Slote, of New York City (Max E. Lynne, of New York City, on the brief), for defendants American Spirits, Inc., and

Sidney Kessler, individually and as a partner of Foster & Co.

Stewart M. Seymour, of New York City, for defendant American Distilling Co.

LEIBELL, District Judge.

Plaintiff as a stockholder of the American Distilling Company, which owns 50% of the stock of American Spirits, Inc., brings this action on behalf of both said corporations and names as defendants a number of directors, a partnership, and certain individuals, who allegedly aided the delinquent directors and participated in certain transactions, which are claimed to have resulted in damage to the two corporations and in profits to the wrongdoers. Plaintiff has been a small stockholder of the American Distilling Company and its predecessor, American Commercial Alcohol Corporation, since May 8, 1939. Since this is a derivative action the claim asserted is for the benefit of the two corporations, The American Distilling Company and its subsidiary, American Spirits, Inc.

The amended complaint charges that there were four transactions in which either Distilling or Spirits was deprived of a profitable business opportunity, which the corporate directors and other individual defendants diverted to the benefit and profit of certain individuals and a partnership.

The Ozark Mountain Distilling Co. transaction.

Paragraphs 18 and 19 of the amended complaint allege that in June 1942 the defendants Distilling and Spirits and their respective Boards of Directors were informed of the fact that the business and assets of Ozark Mountain Distilling Co., including an inventory of whiskey and certain warehouses, were available for purchase and that it was highly desirable for one of said defendant corporations to make the purchase. Paragraph 20 of the complaint alleges that the defendant Kessler was sent to Joplin, Missouri, by either Distilling or Spirits for the purposes of testing the whiskey inventories of Ozark and to report on their quality, and that Kessler submitted a favorable report.

Paragraph 21 alleges:

"21. Notwithstanding the desirability of the purchase of the business, assets and inventory of Ozark Mountain Distilling Co., the defendants Kessler, Siskind, Thomas S. Brown, Russell R. Brown, Buck, Cole, Nelson, Seymour, Millar and Michell, wrongfully, negligently, recklessly and wantonly, and in violation of their respective fiduciary obligations to the defendants Spirits and Distilling knowingly caused and permitted the defendants Kessler, Siskind, Cole and Rothberg, and one Herbig Younge, an attorney for Distilling to purchase the said Ozark Mountain Distilling Co. and thereby to appropriate to the said Kessler, Siskind, Cole, Rothberg and Younge the business opportunity which was available to and desirable for the defendants Distilling and Spirits, or either of them."

Paragraphs 22 and 23 allege that in making the purchase Siskind, Kessler, Cole, Rothberg and Younge acted in violation of their fiduciary duty as directors or officers or attorney to the defendants Distilling or Spirits or both, and that the said defendants have realized and continue to realize large profits from their purchase of Ozark Mountain Distilling Co. In paragraph 44 it is charged that the funds, credit, good will and trade connections of Distilling were made available to and were used by certain of the defendants in making and financing the Ozark purchase.

The Ben Burk, Inc., transaction.

Paragraphs 24 to 28 allege that in December 1942 the defendant Distilling purchased all of the stock of Ben Burk, Inc., for the purpose of obtaining large quantities of whiskey and other alcoholic liquors which Ben Burk, Inc., had in its inventories, as well as copyrights, trade marks, trade names and good will; that immediately thereafter Distilling disposed of the liquor inventory by declaring and paying out the entire liquor inventory in the form of dividends; that it was desirable and advantageous for Distilling to continue the business of Ben Burk, Inc., for its own benefit or to liquidate it for its own benefit; that notwithstanding that fact defendant Distilling sold a 49% interest in Ben Burk, Inc., to the defendants Kessler, Foster and Westerman as co-partners doing business as Foster & Company; and that as a result of said sale the purchasers profited to the extent of more than $200,000.

The Country Distillers Products, Inc., transaction.

Paragraphs 29 and 30 allege that in July 1943 the directors of Distilling and Spirits knew that a large majority stock interest

in Country Distillers Products, Inc., was for sale and that the said purchase was extremely desirable and advantageous to either of said defendants, Distilling or Spirits, and that said corporations were offered an opportunity to purchase the stock. Paragraphs 31 to 34 contain the following allegations:

"31. The defendant Distilling entered into contractual arrangements for the purchase of the said stock interest of Country Distillers Products Inc., and paid on account in connection therewith the sum of $100,000, but notwithstanding the said contractual arrangements and the payment of $100,000, and the fact that the said purchase would be of great advantage and profit to the defendant Distilling or to defendant Spirits, the defendants Kessler, Siskind, Thomas S. Brown, Russell R. Brown, Cole, Nelson, Seymour, Millar and Michell wrongfully, negligently, recklessly and wantonly, and in violation of their respective fiduciary obligations to the defendants Distilling and Spirits, knowingly, caused and permitted the defendants Kessler, Foster and Westerman, comprising the partnership of Foster & Company, to purchase said stock interest in Country Distillers Products Inc., and thereby to appropriate to the said defendants Kessler, Foster and Westerman the valuable business opportunity represented by the said stock interest in Country Distillers Products, and to deprive Distilling and Spirits thereof.

32. In order to place the defendants Kessler, Foster and Westerman, as partners in Foster & Company, in funds for the purpose of acquiring the said capital stock of Country Distillers Products Co., the individual defendants Thomas S. Brown, Russell R. Brown, Buck, Cole, Nelson, Seymour, Millar and Michell, directors and officers of Distilling, caused the defendant Distilling to obtain from many of its customers payments to said Foster & Company in sums of money aggregating in excess of $10,000,000 as deposits or payments on account of future deliveries of whiskey from the inventory of said Country Distillers Products Co. Inc.

33. The defendant Russell R. Brown, as President of the defendant Distilling, communicated with Distilling's many customers for the purpose mentioned in the preceding paragraph hereof, and most of the said customers believed that they were dealing with the defendant Distilling.

34. The defendants Thomas S. Brown, Russell R. Brown, Buck, Cole, Nelson, Seymour, Millar and Michell, officers and directors of Distilling, further caused the defendant Distilling to enter into an agreement with the defendants Kessler, Foster and Westerman, as partners in Foster & Company, that Distilling would bottle the said whisky of Country Distillers Products, Inc. and would use trade names and labels of Distilling so that Foster & Company could make deliveries of said whisky to Distilling's customers.

Paragraph 35 alleges that the defendants Kessler, Westerman and Foster, comprising Foster & Company, realized several million dollars as profits from their transaction in Country Distillers Products, Inc., and that Spirits suffered a corresponding loss.

Contract between Distilling and Foster & Company.

It is alleged in paragraph 36 that in the early part of the year 1943 certain of the individual defendants who were directors and officers of Distilling caused Distilling to enter into a contract with Foster & Company, pursuant to which Distilling would blend and bottle liquors for Foster & Company and would place on the bottles certain labels and trade names formerly owned by Ben Burk, Inc., and other trade names and labels of Distilling, and that the said contracts were not negotiated at arms' length and were unfair and inequitable, improvident and wasteful to defendant Distilling.

The James J. Sullivan, Inc., transaction.

It is alleged in paragraphs 37 to 40 that the individual directors and other defendants, in violation of their fiduciary obligations to Distilling and Spirits, knowingly caused and permitted the defendants Kessler, Westerman and Foster, comprising Foster & Company, to purchase the stock, business, assets and inventory of James J. Sullivan, Inc., although said assets were available to and desirable as a purchase by Distilling or Spirits, and that as a result Foster & Company realized substantial profits and the defendants Distilling and Spirits suffered damage in the loss of prospective profits.

Paragraphs 43, 44 and 45 charge that the individual defendants and Foster & Company with knowledge of the various transactions and of the relationship between Kessler and the other individual defendants, and with having knowingly co-

operated with the directors in the violation of "their fiduciary duties" in the transactions alleged in the amended complaint.

In paragraph 13 it is alleged that the two Browns, Buck, Cole, Bragg, Seymour, Nelson, Miller and Michell, with one Warren W. Foster, deceased, constituted the Board of Directors of Distilling during the times mentioned in the complaint; that Distilling owned 50% of the stock of Spirits and that the other 50% was owned by Kessler and Siskind; that the defendant Rothberg was the Vice-President of Distilling; that the defendants Kessler and Siskind were directors of Spirits and were the President and Vice-President of said corporation; that the Board of Directors of the defendant Spirits was composed of individuals in addition to Kessler and Siskind, who were designated, nominated, elected and controlled by the defendants Kessler, Siskind, the two Browns, Buck, Cole, Nelson, Seymour, Millar and Michell. Paragraph 46 alleges that the defendant Seymour was the attorney and counsel of Distilling and Spirits and was a director of Distilling, but that nevertheless he acted as attorney and counsel for the defendants Kessler, Cole, Siskind, Rothberg, and for Kessler, Foster and Westerman in Foster & Company. Paragraphs 47 and 48 show that demand on the directors of Distilling or Spirits to bring this suit would have been futile.

A second count of the complaint charges the defendants with having conspired to do the things set forth in the first count. Paragraph 53 adds:

"53. It was agreed among all the individual defendants and the aforesaid Herbig Younge that nominally the individual defendants other than Kessler, Siskind, Westerman and Rothberg would have no interest in any of the acts and deeds done pursuant to the said conspiracy but that the other conspirators would act in their behalf as well as their own and secretly transmit to the other individual defendants their agreed respective shares of the profits of the conspiracy."

The prayer for relief asks that:

"1. That the individual defendants and each of them and the defendant Foster & Company be required to account for the profits, benefits and emoluments obtained and secured by them or by any of them and for the damages and losses sustained by the American Distilling Company, and American Spirits Inc. by reason of the premises; *".

A number of motions have been separately made herein by the various defendants, not all on the same grounds. In some instances the contentions are the same. They may be segregated under the following headings:

(1) To dismiss the amended complaint for failure to state a claim on which relief can be granted. Rule 12(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

(2) To dismiss as to all transactions prior to February 25, 1944 on the ground that plaintiff was not a shareholder prior to that date. Rule 23(b), Federal Rules of Civil Procedure.

(3) To dismiss because the plaintiff stockholder, itself a corporation, went into voluntary dissolution under the laws of Massachusetts on December 26, 1944, and lacks capacity to continue this action, which was instituted in this Court October 21, 1944.

(4) To require the substitution, as parties plaintiff, of those upon whom the shares owned by plaintiff would devolve in the course of plaintiff's dissolution.

(5) To strike the amended complaint on the ground that it was not verified by oath as required by Rule 23(b).

(6) To strike the amended complaint on the ground that it does not comply with Judge Hulbert's ruling concerning certain defects of the original complaint.

(7) To require the statement under separate counts of the various unlawful transactions charged in the amended complaint.

(8) To require plaintiff to serve a more definite statement or to serve a bill of particulars.

(9) To require plaintiff to deposit security because plaintiff is a foreign (Massachusetts) corporation. Rule 34 of our Local Civil Rules and §§ 1522 and 1524, N.Y. Civil Practice Act.

(10) To require plaintiff to deposit security for expenses, under § 61-b of the New York General Corporation Law, Consol.Laws N.Y. c. 23. Rule 34 of our Local Civil Rules.

The amended complaint pleads a claim on which relief can be granted. No more definite statement, or Bill of Particulars, or division of the allegations into separate counts is necessary. The amended com-

174

plaint complies with Judge Hulbert's ruling on the original complaint.

 After the original complaint was served, one of the defendants, Stanhope Foster, moved to dismiss the action on the ground that the complaint failed to state a claim upon which relief could be granted against said defendant, or for an order requiring plaintiff to serve either an amended complaint containing a more definite statement, or a bill of particulars with respect to certain of the allegations to enable said defendant "to prepare his responsive pleading or to prepare for trial." Judge Hulbert heard the motion and on January 18, 1945, filed an opinion in which he stated that he found "no substantial objection to paragraphs 1-16; 18-20; 22; 24-30; 34-35; 37; 39-41; 44-49; and 52-54." The Judge thought paragraph 17 defective for several reasons, principally because it did not sufficiently identify individuals or particularize their alleged wrongful acts. He made a similar criticism of other paragraphs. In the present motions directed against the amended complaint it is asserted that the amended complaint fails to state a claim upon which relief can be granted and it is also charged that the amended complaint does not conform to Judge Hulbert's opinion and the order entered thereon. I have read Judge Hulbert's opinion and I have compared the original complaint and the amended complaint. I believe that the pleader has made an honest effort to comply with Judge Hulbert's directions. The amended complaint adds four new paragraphs and a number of the old paragraphs have been recast and amplified. It contains allegations of fact describing each transaction, which is alleged to have been wrongful and to have caused damage to either American Distilling or American Spirits. The active participation of each individual defendant in each transaction is particularized.

 On a motion of this kind the allegations of the pleading must be viewed in the light most favorable to the plaintiff, to determine if a valid claim is pleaded. Tahir Erk v. Glenn L. Martin Co., 4 Cir., 116 F.2d 865. Under the decisions dealing with the liability of directors for a breach of their obligations as fiduciaries, the amended complaint states a claim on which relief can be granted. Dioguardi v. Durning, 2 Cir., 139 F.2d 774; Frank v. Beane, Jr., D.C.S.D.N.Y., 64 F.Supp. 53; New York Trust Co. v. American Realty Co., 244 N.Y. 209, 155 N.E. 102; Ashman v. Miller, 6 Cir., 101 F.2d 85; Loft, Inc. v. Guth, 23 Del. Ch. 138, 2 A.2d 225; Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281. Facts are alleged on which to base a claim against defendants who were not directors of American Distilling or American Spirits. A "stranger" to the corporation if he knowingly joins a director in violating his trust and participates in the profits thereof, is liable for all the profits. Irving Trust Co. v. Deutsch, 2 Cir., 73 F.2d 121. That principle, holding liable a wilful participant in the fiduciaries' wrongful acts, was applied to a third party who joined with a receiver in buying in property of the trust estate at a foreclosure sale. Jackson v. Smith, 254 U.S. 586, 589, 41 S.Ct. 200, 65 L.Ed. 418. I see no reason why the rule should not serve to hold a partnership, receiving the benefits of the acts of a partner who participates with a fiduciary in transactions that are a breach of the fiduciary's trust. The partnership should not be permitted to keep what it thus received as a result of its partner's wrongful act. The allegations of the pleading are sufficient to connect all the individual defendants with some phase of each transaction. The evidence adduced at the trial will determine which of the defendants is liable in respect to each of the specified wrongful transactions. The trial judge should not be handicapped by an emasculated pleading.

 The complaint as amended does not require a more definite statement, nor should it be supplemented by a bill of particulars. If defendants desire any additional information concerning the allegations of the amended complaint they should seek it through interrogatories under Rule 33, F.R.C.P., or by examinations under Rule 26, F.R.C.P. The various transactions which plaintiff alleges as the basis for the relief he seeks may properly be pleaded in one count. They all involve the alleged misconduct of defendants, resulting in damage to either American Distilling or American Spirits.

 █ The amended complaint contains allegations which excuse a demand on the directors to bring this action.

The amended complaint is attacked on the ground that it does not comply with the last sentence of Rule 23(b), F.R.C.P., which provides: "The complaint shall also set forth with particularity the efforts of the plaintiff to secure from the managing di-

rectors or trustees, and, if necessary, from the shareholders such action as he desires, and the reasons for his failure to obtain such action or the reasons for not making such effort." Considered as a whole, the allegations of the amended complaint adequately account for plaintiff's failure to demand that the directors or stockholders of American Spirits corporation have that corporation sue the individual defendants and the partnership, who are alleged to have caused it great damage. American Spirits has four directors, two of whom are defendants. The other two are alleged to have been designated, nominated, elected and controlled by Kessler, Siskind and other individual defendants. American Spirits has three stockholders, two of whom are defendants (Kessler and Siskind) owning 50% of the stock. The other 50% is owned by the American Distilling Company. As to the latter, all but a few of its directors are individual defendants. They would not bring suit against themselves either through their control of the 50% of the stock of American Spirits or through their control of the Board of Directors of American Distilling. Paragraphs 47 and 48 of the amend complaint when read with the allegations of wrongdoing charged against the individual defendants satisfy the requirements of the last sentence of Rule 23(b), F.R.C.P. Cohen v. Industrial Finance Corp., D.C., 44 F.Supp. 491. The plaintiff stockholder need not apply to a stockholders meeting before instituting the derivative action. Continental Securities Co. v. Belmont, 206 N.Y. 7, at page 16, 99 N.E. 138, 51 L.R.A.,N.S., 112, Ann.Cas.1914A, 777.

■ Plaintiff, as a stockholder since May 8, 1939, had the capacity to sue for the relief sought by the amended complaint. The transactions complained of occurred in 1942 and subsequent years.

■ On May 8, 1939, plaintiff owned 27 shares of 5% cumulative preferred stock of The American Distilling Company as evidenced by stock certificate No. P 010905. Plaintiff has continued to hold the certificate although the preferred stock was, on November 18, 1943, called for redemption as of December 20, 1943. After that date the ownership of the certificate gave plaintiff the right to receive the redemption price and the accrued dividends. All other rights of the preferred stockholder ceased according to Article Fourth of the Certificate of Incorporation. This action was commenced by the filing of a complaint with the clerk of this Court on October 21, 1944. If plaintiff's right to bring this suit rested solely on its ownership of the certificate of preferred stock plaintiff would lack the capacity to sue. The doctrine of Hanna v. Lyon, 179 N.Y. 107, 71 N.E. 778, would apply.

■ It appears that on May 8, 1939, there was also issued to plaintiff certificate No. C 035685 for 33 shares of the common stock of American Commercial Alcohol Corporation, which owned all the outstanding common stock of The American Distilling Company. About April 7, 1942, a plan was devised by which Alcohol acquired certain additional shares of Distilling in exchange for all Alcohol's assets (except its Distilling stock). Distilling became the owner of all Alcohol's assets and Alcohol became the owner of all of Distilling's voting stock, represented by a number of shares equal to the number of Alcohol's common stock outstanding. Alcohol then offered its stockholders in exchange for their Alcohol stock, its voting shares in Distilling, on a share for share basis. About July 1, 1942, this exchange was largely accepted and thereafter outstanding Alcohol common stock was traded in as the equivalent of Distilling company stock, for which it was at all times exchangeable. Plaintiff's right to bring this derivative action on behalf of the defendant, The American Distilling Company, was not affected by his failure to exchange promptly his Alcohol shares for Distilling shares. He was the equitable owner of an equal number of American Distilling Company shares.

■ It appears that plaintiff had a stock-brokerage account with Josephthal & Co., members of the New York Stock Exchange, in the Fall of 1943. On November 4, 1943, plaintiff sold 20 American Distilling shares short. On December 15, 1943, plaintiff delivered to Josephthal the certificate for 33 shares of American Commercial Alcohol Corp. (listed on the Josephthal Account as "Amer. Distilling Co."). On December 31, 1943, plaintiff's account with Josephthal & Co. showed that plaintiff was long 13 shares American Distilling Company stock and some stock of other corporations. That situation continued through January 1945. On February 2, 1944, plaintiff received from Josephthal 13 American Distilling plain (common) stock. On February 21, 1944, 5 shares of said stock were received by the broker, Josephthal & Co., in plaintiff's account and were sold for plain-

tiff on February 24th. That left plaintiff with 8 shares of American Distilling Company stock, represented ·by two certificates. One certificate for 3 shares (C 016825) was delivered by plaintiff to H. C. Wainwright & Co. February 21, 1944, and exchanged for 3 shares of American Distilling Company stock registered in the name of plaintiff, as evidenced by certificate CO 33045. What became of the remaining 5 shares evidenced by CO 5328 does not appear from the records submitted, but plaintiff's counsel says they were sold in February 1944. It is clear, however, that between May 8, 1939 and December 15, 1943, plaintiff was the owner of 33 shares of American Commercial Alcohol stock, the equivalent of 33 shares of American Distilling Company after April 1942; that Josephthal & Co. as plaintiff's broker received the 33 shares on December 15, 1943 and put the same in transfer on December 30, 1943, receiving a certificate for 33 shares of American Distilling Company stock, evidenced by certificate CC-11318, which probably was issued in the name of the broker. Apparently it was out of this certificate that the broker took care of the short sale of 20 shares, and on February 2, 1944, delivered 13 shares to plaintiff represented by 3 certificates which in all probability had also been issued in the broker's name. As to the 13 shares, it is clear that the broker held them as collateral from the time he received from plaintiff the 33 shares on December 15, 1943 until he delivered the 13 shares to plaintiff on February 2, 1944. Plaintiff owned the 13 shares, and of the 13 still owns 3 shares. The fact that for a time the shares were represented by certificates issued in the name of the broker, but carried in plaintiff's account as owned by plaintiff, did not change plaintiff's position as a "shareholder" under Rule 23(b), F.R.C.P. Plaintiff did not have to be a shareholder of record, owning stock represented by a certificate issued in the name of plaintiff, in order to qualify as a plaintiff stockholder in bringing this derivative action under Rule 23(b). Plaintiff was the equitable owner of the stock. Gallup v. Caldwell, 3 Cir., 120 F.2d 90, 94; Richardson v. Blue Grass Mining Co., D.C. 29 F. Supp. 658, 665; Litwin v. Allen, 168 Misc. 205, 4 N.Y.S.2d 55; Willcox v. Harriman Securities Corp., D.C., 10 F.Supp. 532, 535.

■ Part of plaintiff's claim is asserted on behalf of American Spirits, Inc., a corporation whose stock is owned as follows: 50% by American Distilling Company and 50% by two of the defendants, Peter Siskind and Sidney Kessler.. The four directors of American Spirits since February 1941 are Henry A. Falls, Harry A. Bemis, Peter E Siskind and Henry C. Cole. The two latter Cole and Siskind are defendants herein. Cole was also a director of American Distilling Company, for the period covered by the amended complaint. The claim asserted by plaintiff on behalf of American Spirits is in the nature of a "double derivative" stockholders' suit, which is recognized in the Federal courts as coming within the scope of Rule 23(b). Wachsman v. Tobacco Products Corp., 3 Cir., 129 F.2d 815; Goldstein v. Groesbeck, 2 Cir., 142 F.2d 422; United States Lines v. United States Lines Co., 2 Cir., 96 F.2d 148. Since plaintiff was and is a stockholder of American Distilling, which allegedly is not able as a stockholder of American Spirits to exercise its right as a stockholder to sue the individual defendants on behalf of American Spirits for the damage American Spirits allegedly suffered through them, plaintiff is authorized to act in the place of American Distilling in bringing the suit on behalf of American Spirits. Plaintiff's capacity to bring the suit on behalf of American Spirits is well founded.

■ The dissolution of the plaintiff corporation December 26, 1944, did not deprive plaintiff of capacity to continue the action.

■ Defendants assert that the plaintiff, Craftsman Finance & Mortgage Co., Inc., a Massachusetts corporation, was dissolved December 26, 1944, in a voluntary proceeding and that it therefore lacks the capacity to continue this action. When a corporation is dissolved it is legally extinct (some cases say "dead") and its life is continued only for the specific purposes permitted by the statute pursuant to which it is dissolved. Oklahoma Natural Gas Co. v. Oklahoma, 273 U.S. 257, 47 S.Ct. 391, 71 L.Ed. 634. We must look to the State statute for the limitation of the corporation's powers after it is dissolved. Cushman Motor Works v. Commissioner of Int. Rev., 8 Cir., 130 F.2d 977. The Massachusetts General Laws (Ter.Ed.) Chapter 155, §§ 50 and 51, are applicable to the situation of the plaintiff. Sec. 50 outlines the procedure to be followed by a corporation "which desires to close its affairs." The final sentence of that section states:

"A corporation so dissolved shall be held to be extinct in all respects as if its corporate existence had expired by the limitation of its charter."

Section 51 provides:

"Section 51. Continuation for three years to close concerns. Every corporation whose charter expires by its own limitation or is annulled by forfeiture or otherwise, or whose corporate existence for other purposes is terminated in any other manner, shall nevertheless be continued as a body corporate for three years after the time when it would have been so dissolved for the purpose of prosecuting and defending suits by or against it and of enabling it gradually to settle and close its affairs to dispose of and convey its property and to divide its capital stock, but not for the purpose of continuing the business for which it was established; provided, that the corporate existence of such a corporation, for the purposes of any suit brought by or against it within said period of three years, shall continue beyond said period for a further period of sixty days after final judgment in the suit." (Ch. 155, § 51.)

 This stockholder's suit was commenced by the filing of the complaint with the Clerk of this Court on October 21, 1944. Did the plaintiff corporation lose its capacity to carry on the action to judgment, because of the dissolution of the plaintiff corporation December 26, 1944? In my opinion it did not. As stated by Rugg, Ch. J. in Partan v. Niemi, 288 Mass. 111, 192 N.E. 527, 529, 97 A.L.R. 473, "The word 'suit' in section 51 must be interpreted in a broad sense, in view of the purpose intended to be accomplished by the statute." He held also that under the dissolution sections of the statute "the dissolution of the corporation was conditional. * * * The only positive prohibition is that the business for which it was incorporated shall not be continued." He held that the word " 'suit' embraces a voluntary petition in bankruptcy." If an individual plaintiff stockholder, who brings a derivative action on behalf of his corporation, dies in the course of the litigation, the action does not abate. Rule 25(a) (1), F.R. C.P., provides that, "If a party dies and the claim is not thereby extinguished, the court within 2 years after death may order substitution of the proper parties." The stockholder sues in a representative capacity. The claim he asserts is that of the corporation, in which he owns stock. The proceeds of the litigation go to the defendant corporation, of which plaintiff is a stockholder. The corporation is a necessary party defendant so that the judgment may be entered in its favor, if the litigation is successful, or to bind the corporation as res judicata, if the result is adverse.

It seems to me that if a corporation as a stockholder brings a derivative suit on behalf of another corporation, and then the plaintiff corporation is dissolved, equity and public policy would be opposed to the abatement of the derivative action. Rule 23(c) indicates a policy to prevent the termination of a stockholders derivative action, "without the approval of the court." There is no statutory prohibition against this plaintiff going on with this suit and there are good reasons why the dissolution of plaintiff should not deprive plaintiff of the capacity to continue with the action. This is the view expressed in Fletcher, Sec. 8143, as applying to a situation where the action is pending in the name of the dissolved corporation "to the use of the real party".

The affidavit submitted by plaintiff's president alleges that plaintiff still owns the three shares, so there is no need to consider the substitution of those who might become entitled to the stock when plaintiff is liquidated. Rule 25(c), F.R.C. P., will take care of any such situation, if it arises.

The amended complaint is properly verified.

 Another criticism of the amended complaint is its alleged failure to comply with Rule 23(b), F.R.C.P., in that it was not "verified by oath." On the argument of these motions this defect was removed by the submission of a verified amended complaint. The verification under oath was by "Charles Alpert Pres." He swore to the verification September 13, 1945, before a notary public for the Commonwealth of Massachusetts, and the notary's signature and authority are vouched for by the certificate of the Clerk of the Superior Court in the County of Boston. Although the abbreviation "Pres" improperly appears after Alpert's signature— nevertheless he personally swears that the contents of the complaint are "true to his own knowledge, except as to the matters therein stated to be alleged on information and belief and that as to those matters he believes it to be true." There is also the statement, unusual in a corporation

verification, that the verification is made by the individual because plaintiff is a corporation and the affiant is an officer thereof. The use of the term "Pres" after Alpert's signature may be disregarded. As indicated above, plaintiff's dissolution did not deprive it of the capacity to continue this action and that would include authority in its officers to verify an amended pleading.

Plaintiff will be required to post a bond for $250 under §§ 1522 and 1524 of the New York Practice Act. No bond will be required under § 61-b of the New York General Corporation Law.

■ The jurisdiction of the court in this action is based on diversity of citizenship and an amount involved in excess of $3,000, exclusive of interest and costs. Several of the defendants urge that the plaintiff, a Massachusetts corporation, should be required to give security for costs. Some of them ask that the bond be $5,000 or more, citing Long v. Stites, 6 Cir., 63 F.2d 855. I believe that under the circumstances here presented plaintiff should post a satisfactory bond in the sum of $250 as security for costs—a single bond in that amount, running to all the defendants. Rule 34 of the Civil Rules of this court; §§ 1522 and 1524 N.Y. Civil Practice Act; Cavicchi v. Mohawk Mfg. Co., D.C., 27 F.Supp. 981.

■ Two of the defendants, American Distilling Company and American Spirits, Inc., ask that plaintiff be required to deposit security for their expenses under § 61-b of the New York General Corporation Law, which applies to stockholders suits in State Courts. Whether this Court in any given case will follow the State Supreme Court in applying § 61-b rests in the sound discretion of the Federal Judge, under Rule 34 of our local Civil Rules. See the opinion of Judge Bright of this Court in Boyd v. Bell et al., 64 F.Supp. 22.

If the stockholder's charges are serious, specific and appear to have merit, the Court's discretion should not be exercised in such a way as to bar a trial of the issues. To follow such a course, might grant a delinquent or dishonest corporate director and his accomplices immunity from suit. In nearly all stockholders suits the motives of the plaintiff and his attorney are attacked. It is generally charged that the suit has been brought merely to enable the plaintiff's attorney to get a fee, that the stock interest of the plaintiff is infinitesimal, and that the defense of the action will require the directors to expend large sums for which the corporation itself may be liable if the directors are successful in their defense. Sometimes there is a sound basis for that criticism, and in such cases it may be advisable to require a substantial bond. However, I believe that we should not forget Judge Woolsey's observation that "It is appropriate to give allowances (to plaintiff's attorneys) in causes like these which involve corporate therapeutics," where a recovery is made for the corporation. Murphy v. North American Light & Power Co., D.C., 33 F.Supp. 567, at page 570.

■ Under Rule 23(c), F.R.C.P., a stockholder's suit, once it is started in a Federal Court, cannot be voluntarily dismissed or compromised without the approval of the court. Notice of any proposed dismissal or compromise must be given to all stockholders in such manner as the court directs. Under the Federal Rules there can be no private settlement of a stockholder's suit. That was an evil against which Rule 23(c) was directed— private settlements under which the plaintiff stockholder and his attorney got the sum paid in settlement, and the corporation got nothing—although it was the corporation's claim that was being settled. It was argued when the Bill to add § 61-b to the N. Y. General Corporation Law was before the Legislature that it would prevent so-called "strike suits" by stockholders. I fear, however, that the mandatory and discriminatory provisions of the New York statute are likely to do more harm than good.* In the present case, plaintiff's

---

* The New York State statute is so worded as to discourage stockholders' suits against directors. The enactment of a State statute embodying the provisions of Federal Rule 23(c) would go a long way to outlaw the practice of bringing stockholders suits and then settling them privately. It would seem that a corporation whose claim has been thus privately "settled," and the avails received by the plaintiff stockholder, may claim from him the sum thus received which was in excess of his own interest, because the fruits of the litigation properly belong to the corporation. See Young v. Higbee Co., 324 U.S. 204, at pages 213 and 214, 65 S.Ct. 594, at pages 599 and 600. The opinion of Mr. Justice Black in that case contains a clear warning against the private settlement of representative actions.

claim as pleaded in the amended complaint sets forth transactions the good faith of which should be tested on a trial. No bond under § 61-b of the New York General Corporation law will be required.

The above disposes of the motions made by the various defendants. Settle separate orders.